In the Matter of the ATTORNEY-GENERAL *v.* THE CONTINENTAL LIFE INSURANCE COMPANY.

In Matter of Claim of ELIZABETH O. HOYT, Appellant.

Defendant issued a policy of life insurance which provided that if, after the payment of three or more annual premiums, the assured should fail to make further payments when due, upon a surrender of the policy within thirty days after a failure to pay, the company would issue a paid-up policy " for the proportion of the amount of insurance paid for." It also contained a condition that if the premiums should not be paid as specified, the policy would be void. More than three annual premiums were paid on the policy ; one falling due in May, 1876, was not paid, nor was the policy surrendered or offered to be, and no paid-up policy was asked for. In October, 1876, the company failed and a receiver was appointed. Upon a claim presented to the receiver for an allowance as if a paid-up policy had been issued, *held*, that under the terms of the policy, no action was required on the part of the company to avoid it because of the non-payment of the premium, but it became absolutely void at its election, upon failure to pay within the stipulated time, and an omission to surrender the policy as specified therein ; that the complainant was not entitled to relief on equitable principles ; and that the claim was properly rejected.

Upon a reference of the claim H., the insured, testified in substance, that the agent of the company, at the time the policy was issued, stated that it was non-forfeiting, and after he had made three payments all payments made would be so far secured ; that he did not read the policy ; that he was at the time the premium for 1876 became due intently occupied, and the time of payment, as he presumed, escaped his mind ; that afterward when he recalled it, being ignorant of the said condition in the policy, he assumed that if in a short time he should decide to make the payment it could be arranged ; also that because of a doubt as to the soundness of the company he was less prompt and attentive than he otherwise would have been. *Held*, that conceding equity might relieve from the default, no case was established authorizing such relief.

(Submitted June 17, 1883 ; decided June 26, 1883.

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made the first Tuesday of September, 1882, which affirmed an order of Special Term confirming the report of a referee disallowing a claim made by

Elizabeth O. Hoyt, under a policy issued by defendant, upon the fund in the hands of its receiver.

The material facts are stated in the opinion.

*Rudolf Dulon* for appellant.   The appellant was entitled to equitable relief.   (*Rose* v. *Rose*, Amb. 331, 332 ; *Wheeler* v. *C. Mut. L. Ins. Co.*, 82 N.Y. 543, 549, 552 ; *Klein* v. *Ins. Co.*, 104 U. S. 90 ; *De Forest* v. *Bates*, 1 Edw. Ch. 394, 397 ; 1 Pomeroy's Equity, §§ 450, 451.)   The failure of the company excused the claimant from making an application for a paid-up policy afterward.   (*In re Albert Ins. Co.*, Law Rep., 9 Eq. 703 ; *Chase* v. *Phœnix Mut. L. Ins. Co.*, 67 Me. 85 ; *Montgomery* v. *Phœnix Mut. L. Ins. Co.*, 14 Bush, 51 ; *Johnson* v. *Southern Mut. L. Ins. Co.*, 4 Ins. L. J. 189.)

*Raphael J. Moses, Jr.*, for policy-holders, respondents.   If the contract is different from what Mr. Hoyt understood it to be he can only sue for a rescission.   He cannot reform and enforce without showing mutual mistake in the written draft.   (*Nevens* v. *Dunlap*, 33 N. Y. 676.)   Where each party to a contract is equally innocent and there is no concealment of fact which the other party has a right to know, the mistake, whether mutual or unilateral, is treated as laying no foundation for equitable interference.   It is strictly *damnum absque injuria*.   (Story's Eq., §§ 151, 152.)

*Edward H. Hobbs* for receiver.   The failure to pay the premium within the time limited by the stipulations in the policy worked the absolute destruction of the contract of insurance and a forfeiture of all rights depending upon it. (*Roehner* v. *Knickerbocker L. Ins. Co.*, 63 N. Y. 160 ; *Atty.-Gen.* v. *N. A. L. Ins. Co.* 82 id. 672 ; *Robertson* v. *Met. L. Ins. Co.*, 88 id. 541.)   The right to surrender the policy issued by the company and demand a paid-up one ceased when the policy itself became forfeited.   (*Schumacker* v. *M. L. Ins. Co.*, 2 Ins. L. J. 455 ; *Smith* v. *Continental L. Ins. Co.*, 4 Bigelow, 421 ; *People* v. *Widows and Orphans' B. L. Ins.*

*Co.*, 15 Hun, 8.) No facts appear in the papers tending to excuse the failure of the assured to surrender the policy and demand a paid-up one within the time prescribed by the contract, nor is any case made out for equitable relief. ( *Wheeler v. Conn. Mut.*, 82 N. Y. 543.)

EARL, J. On the 16th day of May, 1871, the Continental Life Insurance Company insured the life of John W. Hoyt, in the sum of $5,000, for the benefit of his wife, Elizabeth O. Hoyt, for the term of ten years from the date of the policy, or until his decease, in case he should die before that time. The annual premium on the policy was $557.85, and was to be paid on or before the 12th day of May in each year, or within thirty days after the several payments should be due and payable. The policy provided : " That, if after having received three or more annual premiums, the said assured shall fail to make payments of any further premium when due, then and in that case, upon a surrender of this policy within thirty days after such unpaid premium shall be due, the said company will, in exchange therefor, issue a paid-up policy for the proportion of the amount of insurance paid for." It also contained the express provision that in case the " premiums shall not be paid, as above specified, then and in such case this policy shall be null and void." The last premium was paid when it was due, on the 12th day of May, 1875. No more premiums were thereafter paid or tendered, and the policy was never at any time surrendered, or offered to be surrendered, to the company ; and no paid-up policy was ever requested. The company failed on the 25th of October, 1876, and a receiver was appointed of its property. Mr. Hoyt testified before the referee that at the time he took the policy he made some objection to taking upon himself an obligation to pay the premiums on the ground that while it was easy then it might be difficult at future times to meet the payments, and that after he had made some payments it might become impossible to continue the payments ; and that the agent then said to him that it was a non-forfeiting policy, after he had made three payments ; that after he had made

three payments the payments actually paid would be to his credit, and so far secured; and he testified that that was the substance of what was said to him by the agent; that he did not at the time read the policy, and did not know that he ever read it, although it was during all the years in his possession or under his control; that there were several reasons why he did not continue to pay the premiums, using the following language: "In the first place I was at the time very intently occupied upon some matters of private and public interest both, and I presume that the precise date of meeting the payment escaped my mind; that I think was the chief reason why I was not prompt in meeting it; afterward when I recalled the fact that the payment had not been made at the time (being ignorant of the precise condition which I now find is included in the policy, that any action must be taken by me in order to hold my claim good), I assumed that if within a short time I should decide to make the payment I might still arrange with the company; this, together with the fact that I had come to feel somewhat doubtful of the soundness of the company, made me perhaps less prompt and less attentive than I otherwise would have been." These are all the excuses which he furnishes for not paying his premium when it became due; and he asks to be allowed a claim for a paid-up policy for the premiums paid by him. The Supreme Court denied his claim and we think rightfully.

By the express terms of the policy it was to become null and void in case the premiums were not paid when due, or within thirty days thereafter. No action on the part of the company was needed to avoid the policy for the non-payment of the premium within the stipulated time. The policy after the non-payment became absolutely void at the election of the company; and so the law has been uniformly held by the courts in this State. (*Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 160; *Attorney-General* v. *North America Life Ins. Co.*, 82 id. 172: *Wheeler* v. *Connecticut Mut. Life Ins. Co.*, id. 543; 37 Am. Rep. 594; *Robertson* v. *Metropolitan Life Ins. Co.*, 88 N. Y. 541.)

But the claim is made that this case is distinguishable from those cited, because here no further payments were needed in order to entitle the insured to a paid-up policy for some amount; that all he was required to do was to make his election within thirty days and surrender his policy, and demand a new policy; that therefore it is clear that the company suffered no damage from his delay, and that hence this is a case where a court of equity should relieve against the forfeiture. But within the authorities above cited and the law as it is understood to be settled in this State, this is not a case, we think, for relief upon equitable principles. Here time for the performance of the stipulations in the policy on the part of the insured has always been regarded as of the essence of the contract, and there is no reported case here in which the courts have relieved the insured from a forfeiture occasioned by default in substantial performance on his part.

Then, too, the default of the insured is not well explained nor sufficiently excused. He had no legal right to rely upon what was said by the agent at the time he took the policy. If the loose expressions used by the agent at that time imported more than was contained in the policy (which is doubtful) all negotiations between the parties, and all that was said at the time, are conclusively deemed in the law to have been merged in the written contract. That expresses the exact contract made between the parties at the time, and the whole of it; and the insured had no right to rely upon any oral declarations of the agent made at the same time variant from the language contained in the policy. He had the policy in his possession for several years, and is inexcusable for not knowing its contents. He testified that the non-payment of the premium which fell due in May, 1876, was due in part at least to the fact that he had become somewhat doubtful as to the soundness of the company; and hence the non-payment may have been voluntary and intentional. If the rules of equity relating to relief against forfeitures could be applied in such a case it would lead to great embarrassment in the transaction of insurance business. It is very important that insurance com-

panies should know the extent of their liabilities, and that all uncertainty, so far as it can be, should be eliminated from their transactions.   If, upon the evidence here given, a policy could be reinstated after the lapse of six months, it could be after the lapse of six years.   As these policies are distributed all over the country, at points frequently very distant from the company's main office, it would be involved in embarrassing litigation, dependent upon evidence to be obtained at distant places, at great disadvantage.   We think the safer rule is to hold both parties to the contract made, according to its terms, imposing upon the insured the duty of vigilance and promptitude in the performance of the stipulations resting upon him.

We are, therefore, of the opinion that the order should be affirmed, with costs.

All concur, except ANDREWS, J., absent.

Order affirmed. .