## THE ATTORNEY GENERAL, PLAINTIFF, *v.* THE CONTINENTAL LIFE INSURANCE COMPANY, DEFENDANT.

*Insurance policy — when it is not avoided by a failure to pay the premium when due — when the insured may rely upon the custom of the company to notify him of its maturity — premiums need not be paid to a receiver of an insolvent company.*

The defendant issued to one Tyner, a resident of Bushville, Indiana, a policy of insurance upon his life, the annual premium upon which became due on April fourteenth in each year. From the time the policy was issued, in 1870, down to 1876, the company in each year sent a notice to Tyner of the maturing of the premium and a receipt thereof to a bank at Bushville, and upon receipt of the notice Tyner paid the premium at the bank. Dividends were declared annually upon the policy, which were applied in reduction of the premiums; and until the insured was informed of the amount of the dividend he could not tell the amount of the premium. In 1876 no notice of the amount of the dividend, or of the amount due upon the premium, was given to Tyner, nor was any receipt sent to the bank. The assured died on December twenty-second of that year, leaving the premiums due in April unpaid.

*Held*, that the company could not set up the failure of the deceased to pay the premium as a defense to an action upon the policy, as from the course of dealing between the parties the assured had a right to believe that notice would be given to him of the amount due, when the company required it to be paid, and that a receipt therefor would be sent to the bank.

A policyholder of an insolvent life insurance company is not required to pay premiums after a receiver of the property and effects of the company has been appointed.

APPEAL by Francis Grey, as administrator of the estate of William Tyner, from an order affirming the report of a referee rejecting a claim made for the payment of a policy of life insurance issued by the defendant.

*Lucius McAdam*, for the appellant.

*Edward H. Hobbs* and *John C. Keeler*, for the attorney general, respondent.

DANIELS, J. :

The policy was issued on or about the 26th of April, 1870, upon the life of William Tyner for the sum of $5,000, payable to his legal representatives. It was subject to the payment of an annual premium of ninety-two dollars and fifty cents. This premium, by

the terms of the policy, was payable on or before the fourteenth of April in every year, and it was provided in the policy that in case the premium should not be paid, as specified therein, that the policy should be null and void. The premiums preceding the one which became due on the 14th of April, 1876, were regularly paid, but that was not paid and the assured died on the twenty-second day of the following December. To relieve the case from the effect of this default, it was proven that the company had made it a practice to previously give notice to the assured of the fact that the premium was maturing or had become payable, and a receipt for it was sent to the Rushville National Bank, situated at Rushville, in Rush county, Indiana, where the assured had his place of residence. Upon this notice being received, and the receipt delivered to him, the assured was accustomed to pay the premiums at the bank, which remitted the amounts to the insurance company.

Before the year 1876 the company had an agency in the State of indiana, but that was terminated early in the year 1876, as early certainly as the month of May. The policy was of the description known as a participating policy, allowing the policy-holder a share in the dividends of the company, which were applied in reduction of the annual premiums required to continue it. For that reason it could not be known what the amount would be, which would be payable for the satisfaction of the annual premium, until the dividend was ascertained and deducted from the gross amount of the premium. This, in the preceding years, had been done by the company before forwarding the annual receipt, which stated the deduction and the balance payable by the assured for the payment of the premium. No notice of the amount of the dividend or of the balance due from him was given to him for the premium maturing on the 14th of April, 1876. Neither was any notice sent to him stating the amount due from him, or indicating the manner, where or how it might be paid.

From this course of dealing which had arisen between the company and the assured under this policy, he had the right to believe that notice would be given to him of the amount due from him when the company required this premium to be paid, and that a receipt would be forwarded, as receipts previously had been, to the bank, containing the same information. That conclusion could be

reasonably, as well as correctly drawn by him from the manner in which, with the assent of the company, the same business had previously been transacted. The assured would not be in fault for assuming that a like course would be taken as to the premium due in April, 1876, as had been in the statement and collection of the premiums for the preceding years. He could very naturally assume that when the company desired the premium to be paid, that the ordinary receipt would be sent forward and information given to him of the fact, and rely securely upon the supposition that this usage which had grown up between himself and the company, would still be observed. The fact that the notice and receipt were delayed beyond the usual period of time, would not necessarily have the effect of disturbing this conviction. For it might well be supposed that when the company required the money, it would follow the usual course it had taken to obtain it. The circumstances were such as to induce this conviction in the mind of the assured, and it would be a fraud upon him and his personal representative to permit the company, in violation of this assurance, to forfeit the policy without notice at any time to him that it intended to abandon the course which had previously been so uniformly followed ; and that, the law will not permit. For it requires the same good faith in dealings of this description that it does in all other transactions, and will not permit one party to mislead another by creating an expectation not designed on the part of the party creating it to be realized. This subject was examined in *Insurance Company* v. *Eggleston* (96 U. S., 572). The facts there were similar in their legal effect to those which have been established by the evidence given in support of this claim. There the assured had received information when his premiums became payable, where and to whom they could be paid. But that was omitted as to the last of the premiums, and it was not paid, and because of its non-payment the liability of the company upon the policy was resisted. In answer to that the court said, BRADLEY, J., delivering the opinion : " Such notice it would seem had never been omitted prior to the maturity of the last installment. The effect of the judge's charge was, that if this was the fact, and if no such notice had been given on that occasion, and the failure to pay the premium was solely due to the want of such notice, it being ready, and being tendered as soon as notice was given, no forfeiture

was incurred. We think the charge was correct under the circumstances of this case. The insured had good reason to expect and to rely on receiving notice to whom and where he should pay that installment. It had always been given before; the office of the company was a thousand miles away, and they had always directed him to pay to an agent, but to different agents at different times." (Id. 578.)

The principle here announced and acted upon is even more especially applicable to this case than it was to the one then before the court. For the assured, under this policy, could not know what amount was required to be paid by him for the extinguishment of the premium without information from the company showing the extent of the deduction made by the dividend of the company The fact appeared in the present case that the assured was a man, of responsibility, prompt in the payment of his debts; and the probability was very decidedly indicated that the premium would have been paid by him, if it had not been for this neglect and omission on the part of the company itself. The same subject was considered in *Helme* v. *Philadelphia Life Insurance Company* (61 Penn., 107), where it was said by THOMPSON, C. J., that "if it was the practice of the company to notify the plaintiff of the times her premiums were due and payable, and omitted on the occasion of the default; or if they so dealt with her as to induce a belief that the clause of forfeiture would not be insisted on in her case, in case of a dereliction of payment at the day, and it was declared that the only risk she ran in not paying at the precise time, was death occuring in the interval of non-payment of overdue premiums, and thus put her off her guard, they ought not to be permitted to take advantage of a default which they may themselves have encouraged." (Id., 110.)

A similar view was taken of the law in *Meyer* v. *Knickerbocker Life Insurance Company* (73 N. Y., 516), where, upon the application of the same general principle, the company was precluded from taking advantage of the omission of the assured to pay the premiums upon the policy. The case of *Attorney General* v. *Continental Life Insurance Company* (93 N. Y., 70) has been relied upon as establishing a different principle and sustaining the view adopted and followed by the referee. But it does not, for there the

facts were not of such a character as to induce the assured to rely securely upon the expectation that information would be received from the company, and a receipt showing the balance required to be paid would be forwarded before payment of the premiums should be made, as were the facts in the present case.

On the 25th of October, 1876, the company became insolvent and a receiver of its property and effects was appointed. Up to that time the assured was not shown to have been in any default under the circumstances, as they were made to appear by the evidence. That appointment relieved him from further attention to the payment of the premium. It was not called for, and he was from that time absolved from the obligation of payment. (*People* v. *Empire Mutual Life Insurance Company*, 92 N. Y., 105.) Up to that time, certainly for the reasons already stated, no such default existed against him as could legally result in forfeiting the policy. Throughout the intervening period he could fairly and honestly rely upon the expectation that when the company desired the premium to be paid, it would forward the necessary information and receipt, and that he would not before then be considered in default. That he did act upon that belief is a just and fair inference from the evidence given in support of the claim, and under the authorities which have been referred to, the referee should have sustained the claim as it was presented to him. The order from which the appeal has been taken should be reversed and an order should be entered sustaining the claim as a valid claim against the receiver, to the extent to which it was settled by the actuary, with the usual costs and disbursements on the appeal to the appellant.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Order reversed, with ten dollars costs and disbursements; order entered allowing claim as adjusted.