SHEERER, Guardian, v. MANHATTAN LIFE INS. Co.[1]

*(Circuit Court, D. Kentucky. July 15, 1884.)*

1. INSURANCE—CONSTRUCTION OF POLICY—"ON OR BEFORE."
    Where an insurance policy contains a stipulation that the policy shall determine if the premium is not paid " on or before the day " fixed, and by a separate instrument, delivered simultaneously with the policy, and for the same consideration, the company agrees, after the payment of three annual premiums, to issue a paid-up policy for a proportionate amount on the surrender of the policy to the company "on or before it shall expire by the non-payment of the fourth or any subsequent annual premium," the stipulation and agreement should be read together as one contract, and the word " on " in the contract should be construed to mean the instant of the expiration of the policy.

2. SAME—PAID-UP POLICY.
    In such a case the time of the surrender of the policy is of the essence of the contract, and the insured is not entitled to a paid-up policy on the surrender of the original policy after it has expired by non-payment of a premium
    Former opinion in this case, 16 FED. REP. 720, modified.

In Equity.

[1] Reported by Geo. Du Relle, Asst. U. S. Atty.

*James S. Pirtle* and *Goodloe & Roberts,* for complainants.

*Fellows, Hoyt & Schell* and *Young & Trabue,* for defendant.

BARR, J.   After the demurrer to the bill was overruled, the defendant answered, and upon the issues made has taken testimony.   It appears from this evidence that the defendant holds the note of Duerson for $491.40, which is as follows, viz.:

"$491.40.                                     NEW YORK, May 9, 1869.

"Twelve months after date, for value received, I promise to pay to the Manhattan Life Insurance Company of New York, or order, four hundred and ninety-one 40-100 dollars, with interest, payable annually in advance.   In case of the death of William F. Duerson, insured in policy No. 17,241, the amount of this note is to be deducted from the amount of the said policy, or cancelled by profits.

"No. 18,401.                                     WM. F. DUERSON."

This note is for the same amount as the annual premium due that day, and although the complainant exhibits a receipt for that premium paid in cash, the note was, no doubt, taken for a premium loan as of that date.   The receipt of May 9, 1869, for the annual premium, acknowledges the receipt of cash, and nowhere indicates that it was paid with a premium loan, or that one was made.   The receipt for the next year, May 9, 1870, has a memorandum at the bottom which would indicate that $42.65 had been paid as interest in advance, and as the premium loan of that date is stated at $163.80, this interest must have included another loan.   The evidence is that neither the cash nor the note, given May 9, 1870, was received by the home office.   This, however, does not affect the right of complainants, as the receipt for the premium is signed, and was delivered by the proper officers of the company.   It appears that no interest has been paid after May 9, 1870, upon either note.   The testimony also proves that the agreement under which complainants claim the right to a paid-up policy was executed and delivered simultaneously with the original policy, and that after the assured failed to pay the premium due May 9, 1871, the original policy was marked off on the company's books, and no longer considered an existing liability, and that the reserve which was intended to provide for the payment of the loss has been distributed among the policy-holders of the company, and that, by reason thereof, the company's ability and condition as to the payment of this loss has materially changed since May 9, 1871.   In other respects the record remains as when heard on the demurrer.

The learned counsel for the defendant insist that complainants are not entitled to relief, because (1) the agreement made the right to a paid-up policy conditional upon the surrender of the original policy on or before it expired by the non-payment of the fourth or any subsequent annual payment, and the time of surrender is of the essence of the contract; (2) that the right to a paid-up policy is forfeited because of the neglect to pay the interest on Duerson's notes in advance.

The last proposition need not be considered further than to call attention to the fact that neither the policy nor the note declares that the non-payment of the interest in advance shall forfeit the right to recover a loss or to a paid-up policy. The only provision in the policy in regard to premium loan notes is that in adjusting the loss there shall be deducted "therefrom the amount of all unpaid notes given for loans" on that policy. The note which is exhibited by defendant provides that the amount of it "is to be deducted from the amount of said policy or canceled by profits," and, although the interest is to be paid in advance, there is no penalty for its non-payment.

But the other is a much more serious question. In considering it on demurrer, the then court expressed much doubt, but, following the view expressed by the Kentucky court of appeals in *Montgomery* v. *Phœnix Mutual Life Ins. Co.* 14 Bush. 54, overruled the demurrer. It now appears that the agreement and the policy were delivered simultaneously, and for the same consideration. They must therefore be read together, and as one agreement. The two, thrown together, would read, upon the point under consideration, thus, viz.: "In case the said Sallie W. Duerson shall not pay the said premiums on or before the day hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine;" and "it is hereby understood and agreed that after the receipt by the Manhattan Life Insurance Company of not less than three annual premiums, on within policy No. ———, and on the surrender of said policy to said company on or before it shall expire by the non-payment of the fourth or any subsequent annual premium, the said company will issue a policy not subject to any subsequent annual premiums," etc.

It is insisted for the complainants that "on or before it shall expire" must mean after the policy has expired, else the word "on" is without meaning. The defendant's counsel, on the contrary, insist that the agreement requires the surrender while the policy is alive, and the surrender of a live policy, and upon this draw a distinction between this case and that of Montgomery, in which the policy provided for the surrender of the policy within 12 months *after* its expiration. We think the word "on" in this agreement means at the instant of the expiration of the policy, and the word "before" any time in advance of that instant. We, however, do not concur in the suggestion that there is a material difference between the case at bar and Montgomery's. Here the surrender of the original policy may be made at the very instant of its expiration, when the policy, if alive at all, has no appreciable value. The value of the policy surrendered may not be a consideration for the paid-up one. Indeed, we are inclined to the opinion that under this agreement Mrs. Duerson was entitled to the full insurance, $10,000, until noon, May 9, 1871, and a paid-up policy for the lesser sum commencing from that time. The

contract is not explicit upon this point, but the fair and reasonable construction is that the annual payment made May 9, 1870, paid for the full insurance, $10,000, for the current year, and that the insurance for the lesser sum did not commence until the end of this current year, and this, without regard to the date of the election, (if within the year,) to take a paid-up policy.

If this be the proper construction, then the argument which is so earnestly urged, that the surrender of a live policy for the $10,000 and for a part of the current year was to be a material consideration for the delivery by the company of a paid-up policy for the lesser sum, is not a sound one. This argument may, however, be unsound, and yet the time of. the surrender of the original policy be intended by the parties to be of the essence of the contract. Reading the policy and the agreement as one contract, I have concluded, after a careful reconsideration of the question and the authorities, that the time of the surrender of the old policy is of the essence of this contract.

In discussing the demurrer I considered the agreement and the policy as distinct contracts, and indicated that the surrender of the policy was a condition precedent to getting a paid-up policy, but that the *time* of the surrender was immaterial; but, reading the policy and agreement as one contract, I do not think this distinction a sound one, or, indeed, sustained by the language of the agreement.

This court, while always inclined to follow the decisions of the state courts, because it administers the law concurrently with them, yet is not bound by such decisions. 16 Pet. 45; 102 U. S. 14.

The very able opinion in *Montgomery* v. *Phœnix Mutual Life Ins. Co., supra*, is not sustained by the weight of authority, and we think it, as well as the opinion on the demurrer in this case, are to be criticised, because they apply the rules of construction applicable to contracts for land, to the construction of an insurance contract. Courts in construing contracts may look to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties to the contract possessed. *Merriam* v. *U. S.* 107 U. S. 441; S. C. 2 Sup. Ct. Rep. 536.

In this case the language, strictly construed, binds the company to issue a paid-up policy only "after the receipt of not less than three annual premiums; * * * and on the surrender of said policy to the company on or before it shall expire," etc.

The right to a paid-up policy commenced only after the payment of the requisite number of annual premiums, and it was on condition that the policy was surrendered "on or before it shall expire" by reason of the non-payment of premiums. This was the time fixed within which the company was bound to issue a paid-up policy. The effect of the surrender may or may not have deprived the assured of the full insurance for the remainder of the year. In our view, it is not material to determine the effect of such a surrender; the important question is, has the agreement limited the time within which the sur-

render must be made? If we considered the subject-matter of this contract, and the circumstances under which this and other insurance companies do business, we feel constrained to give defendant a strict construction of this agreement, even though it may be a hardship upon complainants, who are infants.

The overwhelming weight of authority is against the court in *Montgomery* v. *Phœnix Mutual Life Ins. Co.* Most of these decisions have been delivered since that opinion, and some of them since the overruling of the demurrer. See *Atty. Gen.* v. *Continental Ins. Co.* 93 N. Y. 74; *Hudson* v. *Knickerbocker Life Ins. Co.* 28 N. J. Eq. 168; *Bussing's Ex'r* v. *Union Mut. Life Ins. Co.* 34 Ohio St. 222; S. C. 8 Ins. Law J. 218; *Universal Life Ins. Co.* v. *Whitehead*, 58 Miss. 222; S. C. 10 Ins. Law J. 337; *Coffey* v. *Universal Life Ins. Co.* 10 Ins. Law J. 525; *Smith* v. *Nat. Life Ins. Co.* 13 Ins. Law J. 330.

The bill should be dismissed, with costs.

MATTHEWS, Justice. I concur fully in the reasoning and conclusion of this opinion. The language of the contract, it seems to me, is too plain for interpretation, and its legal effect is to limit the right of the assured or his representatives to a paid-up policy to the time during which the original policy is in force, including the moment at which it would expire by non-payment of premium. The nature of the contract is such that time must be deemed of its essence.