WIDENER, Circuit Judge,
dissenting:
I respectfully dissent for two reasons, neither of which is more important than the other.
First, this case involves a question of state law that has not been answered by the West Virginia courts or in any other reported decision. As a matter of procedure and prudent deferment to the state courts, I believe this court should let West Virginia courts decide this novel question of state law. Second, having reached the merits of this case, I suggest that the majority misconstrues the facts of the case as well as the language of the applicable statute to achieve what can only be termed an incorrect result.
I.
This is a case of first impression, not only in the federal courts, but also in the courts of the fifty states. It is purely a question of state law. Especially for those reasons, I think the refusal of the majority to refer the question decided to the Supreme Court of West Virginia is an abuse of discretion if it is possible to impose that standard in the situation presented here. Declining to accept the open invitation of the courts of a State to decide such a question of law, uniquely state, may even be said without undue exaggeration to border on a return to Swift v. Tyson, 16 Pet. (41 U.S.) 1, 10 L.Ed. 865 (1842); forgetting, along the way, the teaching of Erie that “whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law.” Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).
II.
This case is on appeal from an order on summary judgment. We review summary judgment orders de novo. Donmar Enters., Inc. v. Southern Nat’l Bank of North Carolina, 64 F.3d 944, 948 (4th Cir.1995).
III.
Both the district court and the majority erred, I submit, in the principal premise of each of those decisions when each found that Delinda Camera did not purchase the third shipment of tapes on credit. The district court found:
It[, Delinda Camera,] did not purchase the tapes in the Third Shipment on credit.
Mem. Op. & Order, at 10, Sept. 2, 1994. JA 144. The majority found:
*141 Delinda Camera did not purchase the third shipment of tapes from Stereo Factory on credit.
Slip. op. at 137. This mistaken statement of fact goes to the heart of the majority’s opinion and I think it is plainly wrong. To understand the true nature of the transaction between Stereo Factory and Delinda Camera, we must look to the shipment invoice.[1]
*142 [[Image here]]
*143 Stereo Factory’s invoice for the last shipment of tapes to Delinda Camera clearly shows that this was a charge transaction. See Stipulations of Fact, Ex. P, Sept. 22, 1993. JA 97. The transaction could have been C.O.D., cash, or charge, and it was charge. Under the section of the invoice titled “TERMS”, the box next to “CHARGE” contained an X while the boxes next to “C.O.D.” and “CASH” were not marked.
The invoice shows on its face that the tapes were delivered to Delinda Electronics on September 3,1992.
“9-3-92, Delivered RC [apparently initials] 60 short 499,940 total”
The invoice also shows on its face payment on September 4,1992.
“Paid CK 38752 9-4-92”
The invoice also provides “Mr Ritz to send check within 3 days of receipt of goods for $20,000 cash discount.”
Neither the opinion of the district court nor the opinion of the majority refers to the stated terms of the sale as shown by the invoice, much less explain them. The obvious, and only, explanation from the invoice is that the transaction was a credit transaction. That the invoice is that of the transaction at hand is agreed to by Stipulation of Fact, Exhibit P. “There would be no reason in having a stipulation of facts if parties were at liberty to ignore it....” Judge Parker in Westinghouse Elec. Corp. v. Bulldog Electric Prod. Co., 179 F.2d 139, 141 (4th Cir.1950). So the facts relied upon by the district court and the majority, by ignoring the invoice, are shown to be in error.
IV.
The district court and the majority rely on comment 3 to § 46-9-312, which recognizes the distinction between payment on delivery of inventory and payment after delivery, and distinguishes cash proceeds from accounts proceeds. And that comment, indeed, provides that § 312(3)
gives an answer limited to the preservation of the purchase money priority only insofar as the proceeds are cash received on or before the delivery of the inventory to a buyer, that is, without the creation of an intervening account to which conflicting rights might attach. W.Va.Code § 46-9-312 cmt. 3.
Even the majority opinion itself provides that “[w]here the sale of inventory results in an account, the rights of the purchase money secured creditor in the proceeds may conflict with the rights of other creditors who have security interests in the accounts.” Slip op. at 137. The majority specifically recognizes that the Code treats cash transactions and credit transactions differently:
In using the “on or before the delivery” language of § 46-9-312(3), the framers intended to differentiate between transactions in which the buyer paid in cash and transactions in which the buyer set up a credit arrangement and ended up owing the seller for the cost of the goods.
Slip op. at 136. Thus, while the majority acknowledges that a different result obtains if an account is created, it fails to acknowledge that an account is created when payment is received after delivery. The Code defines an account as “any right to payment for goods sold ... which is not evidenced by an instrument or chattel paper.” W.Va.Code § 46-9-106. If the seller receives payment on or before delivery, then the parties have not created an account, I submit. But, if the seller does not receive payment on or before delivery, then the parties have created an intervening account to which conflicting rights might attach.
In this case, the invoice and stipulations of fact show the creation of an intervening account. The failure to recognize this fact is the principal error in the majority opinion, which goes out of its way to attempt to justify its conclusion that this was a cash transaction.
But the factual underpinning of the justification fails.
, The majority opinion provides that “Delinda Camera and Stereo Factory clearly contemplated a cash transaction.” Slip op. at 137. The invoice, however, provides that the transaction was “CHARGE.” Indeed the boxes on the invoice for “C.O.D.” and “CASH” are left blank. J.A 97.
The majority opinion provides that “... payment for the shipment included a $20,000 discount for payment in cash.” Slip op. at *144 137. The invoice, however, provides “Mr Ritz to send check within 3 days of receipt of goods for $20,000 cash discount.” So the discount was not for cash only, as the majority opinion implies, but also for payment “within 3 days of receipt of goods,” hardly the same. J.A. 97. The majority opinion provides that “... the fact that Delinda Camera issued its cheek on the day following the receipt of the third shipment of tapes does not imply that credit was extended to Delinda Camera.” Slip op. at 137. The stipulations of fact, however, provide that “[o]n Sept. 3, 1992, Delinda received the Third Shipment. The next day, on September 4, 1992, Delinda issued a check payable to Stereo Factory____” Stipulation 18, J.A. 49-50.
Thus, the check of Delinda Camera was not even issued until the day after delivery. During the period of time between the delivery of the goods and at least the issuance of the cheek, there is no other explanation but that credit was extended to Delinda Camera, and this is even verified by the invoice that it was a “CHARGE” transaction.
The majority opinion relies on what it calls “the realities of modern business,” to wit:
Given the realities of modem business it is reasonable to expect a slight delay between the unloading of goods and the issuance of a check in payment for those goods. In a large company, it may take several hours — or even overnight — for the paperwork to travel from the receiving department, where the goods are unloaded, to the bookkeeping department, where the payment check is issued.
Slip op. at 137.
This statement is subject to the same difficulty as are the critical parts of the factual foundation of the majority opinion I have mentioned above.
There is nothing in the record about the “realities of modem business.”
There is nothing in the record about a “slight delay between the unloading of goods and the issuance of the cheek in payment of those goods.”
There is nothing in the record about whether or not Delinda Camera is “a large company.”
There is nothing in the record about whether, at Delinda Camera, it may take “several hours or even overnight for the paperwork to travel from the receiving department to the bookkeeping department.”
There is nothing in the record about whether or not Delinda Camera has a receiving department.
There is nothing in the record about where the goods were unloaded, much less whether at a receiving department.
There is nothing in the record about whether or not Delinda Camera has a bookkeeping department.
There is nothing in the record about where the payment check was issued, at any bookkeeping department or elsewhere.
Shortcutting, such as that which the majority engages in here, is quite contrary to proof of custom of the trade, for I must assume that is what the majority seeks to rely upon in the above recitation of facts.
Custom or Usage in Trade and Commerce. In evidencing a custom or usage ... by a specific instance, the same general principle as before is applicable; that is, the instances offered (a) should be sufficiently numerous to indicate a fairly regular course of business and (b) should occur under conditions substantially similar to that in question. 2 Wigmore on Evidence § 379 (Chadbourne Revision 1979).
There is nothing in the record to show any regular course of business, or similar condition, or specific instance of any of the facts just relied upon. Even if the majority has relied upon judicial notice for the facts just recited, which it has also not stated, that should not, and indeed cannot, be legitimately accomplished under Fed.R.Evid. 201, which provides, among other things, that for a court to take judicial notice of a fact it “must be one not subject to reasonable dispute” and either “generally known within the territorial jurisdiction of the trial court” or “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” Fed.R.Evid. 201(b).
In the case before us, the facts recited by the majority fail on all three grounds. The facts may be disputed, they are not shown to be generally known within the territorial jur *145 isdietion of the trial court, and they are not shown to be capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.
Thus, the critical factual underpinnings of the majority opinion, I submit, have been shown to be without sufficient foundation.
V.
The cardinal principle of certainty has been the same in commercial law for more than 200 years. By any account, and common consent, Lord Mansfield, was principally, even if not wholly, responsible for the transposition of the law merchant into the common law from whence grew our commercial statutes and the Uniform Commercial Code, with which we are concerned here. He expressed the principle this way:
In all mercantile transactions the greater objective should be certainty: and, therefore, it is of more consequence that a rule should be certain than whether the rule be established one way or the other. Vallejo v. Wheeler, 98 Eng.Rep. 1012, 1017 (K.B.1774).
Mansfield repeated that statement in almost the same words in Buller v. Harrison, 98 Eng.Rep. 1243, 1244 (K.B.1777). That the principle has not changed is shown by the very Code with which we deal. The purpose of Article 9 of the UCC entitled SECURED TRANSACTIONS: SALES OF ACCOUNTS AND CHATTEL PAPERS is found in the official comment thereto, which provides that “[t]he aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and greater certainty.” Official Comment to West Virginia Code, Ch. 46, Article 9, Vol. 13, p. 507 (1993).
In the face of such authority, early and late, the majority decides that payment which must have been made “on or before the delivery of the inventory to a buyer” under § 46-9-312(3) is made “on delivery” if it was made “reasonably contemporaneous with the delivery of the goods,” op. at 137. And the opinion then holds that “Delinda Camera’s check dated the day following delivery constituted payment on delivery in this ease____” Op. at 138.
Thus, I submit that the majority has not only failed to follow the statute involved in this case, as well as the facts, but, by defining “on or before the delivery” to mean “reasonably contemporaneous” it has substituted the uncertain words “reasonably contemporaneous” for the certain words “on or before,” which have not been given other than a literal meaning so far as I have been able to ascertain.[2]
In sum, I would reverse.
ORDER
July 16, 1996
Appellant Bank One, West Virginia, Huntington, NA filed a petition for rehearing with suggestion for rehearing en bane, and Appellee Sony Corporation filed an answer to the petition and suggestion.
A member of the Court requested a poll on the suggestion for rehearing en bane, and a *146 majority of the judges voted to deny rehearing en banc. Judge Widener, Judge Murnaghan, Judge Niemeyer, Judge Michael, and Judge Motz voted to rehear the case en banc. Chief Judge Wilkinson, Judge Russell, Judge Hall, Judge Ervin, Judge Wilkins, Judge Luttig, and Judge Williams voted against rehearing en banc.
The Court denies the petition for rehearing with suggestion for rehearing en banc.
Entered at the direction of Judge Russell. Judge Widener dissents. Judge Motz dissents from the denial of rehearing en banc.

. The record does not contain a copy of the Purchase Order, if one even exists. The invoice is the sole written documentation we have of the transaction.

. E.g. Sheerer v. Manhattan Life Ins. Co., 20 F. 886, 888 (C.C.Ky.1884) (on or before means at the instant of expiration or at any time in advance of that instant); Edward Knapp & Co. v. Tidewater Coal Co., 85 Conn. 147, 81 A. 1063, 1066 (1912) (on or before excludes after); Council 81, Am. Fed'n of State, County, and Mun. Employees v. Delaware, 293 A.2d 567, 570 (Del.1972) (on or before means not later than); Rhoads v. Myers, 245 N.W. 707, 710-11 (Iowa 1932) (on or before means at any time in advance of, to the exclusion of any time after); O.A. Talbott & Co. v. Byler, 217 S.W. 852, 853 (Mo.Ct. App.1920) (on or before a certain date in a contract limits time of performance to that date); McCrory Stores Corp. v. Goldberg, 1 N.J. Misc. 446, 95 N.J. Eq. 152, 122 A. 113, 113 (1923) (letter postmarked 7:30 p.m. October 31 does not satisfy requirement of notice on or before October 31 because not received on that date); Kauscher v. National Builders & Realtors, Inc., 87 Ohio App. 403, 92 N.E.2d 702, 703 (1949) (on or before gives option of earlier delivery without obligation to do so); Edlund v. Bounds, 842 S.W.2d 719, 726 (Tex.Ct.App.1992) (on or before means immediately at or at any time in advance *146 of the named period); Novosad v. Svrcek, 129 Tex. 34, 102 S.W.2d 393, 395 (Tex.1937) (on or before in a contract or note means the maker has the option to pay before a fixed time and the paper does not mature until the expiration of that time); Lovenberg v. Henry, 104 Tex. 550, 140 S.W. 1079, 1080 (1911) (on or before means immediately at or at any time in advance of).