APPLETON & a. *v.* PHENIX MUTUAL LIFE INSURANCE CO.

Where, by the terms of a policy of insurance on the life of a person, it is stipulated that on or before a specified day in each year during its continuance an annual premium shall be paid, and if not paid, that the policy shall thereupon become void, the insurer will be estopped to claim that the policy has become forfeited for non-payment of premiums, if his course of action has led the assured to believe that a forfeiture of the policy will not be incurred by delay to pay the premiums on the day they become due

A life insurance company, being estopped to claim a forfeiture of a policy for non-payment of premiums at the time stipulated in the policy, agreed with the assured to receive the premiums past due, and revive the policy if a medical reëxamination should be satisfactory, and if not, to refund the premiums so received. The assured paid the premiums past due, and procured a medical reëxamination, which was unsatisfactory. The company was requested to revive the policy, or refund the premiums so paid, but declined to do either. *Held*, that the assured might treat the agreement as rescinded, and be reinstated in the position he occupied when the agreement was entered into.

BILL IN EQUITY, for a decree that the defendants issue a paid-up policy upon the life of Sarah Appleton, one of the plaintiffs. Facts found by a referee.

From 1870 to February 13, 1878, the defendants were doing business in New Hampshire as an insurance company. Their agent in this state was C. W. Moore, who resided and had his office in Concord. In 1870 the plaintiff Sarah took a policy upon her own life for $2,500. The policy required the annual premium of $176.15 to be paid on or before August 9 of each year during its continuance, with the condition that if it was not so paid the policy should become void, and all payments made on it should be forfeited to the company. The company stipulated in the policy that if, after having received three annual premiums, the policy should be surrendered while in force, a paid-up policy would be issued for the whole amount of even dollars of premiums received by the company.

The plaintiff's husband Thomas, and son Robert M., each had a policy in the defendant company on their respective lives. In 1873 the plaintiff and her husband returned to England, leaving the policy in suit in Robert's hands, with money for him to pay the premiums as they became due. Before his parents returned to England they attended to their policies, and after that Robert attended to them as well as his own. He did most of the business with Moore, but some part of it with a sub-agent at Laconia. When each of the policies was issued, and annually as long as each continued in force, the assured paid one half of the annual premium in cash and one half by a note on six months (instead of all cash as required by the policy), and received a renewal receipt from the agent. The receipt contained a qualification that if any note given as part of a premium should not be paid on or before maturity, the policy should at once become void.

It was the custom with Moore, in his dealings with the assured, and especially with Robert after he had the care of the plaintiff's policy, without objection on the part of the defendants, to retain cash premium notes after maturity for such time as might be required to collect and return the money to the company, and no forfeiture was insisted upon by the defendants, and there was no refusal to recognize the right of Moore to do this, although there was a printed notice on the back of each policy and renewal receipt that no agent had the right to do it without special permission from the officers of the company. Some of the premiums and premium notes on the plaintiff's policy were paid when due, before 1873, but more of them were not; and after 1873 none of them were paid when due, and Moore in each instance received the money without insisting on a forfeiture, it being, as a rule, paid on request often repeated, and sent by him to the company, and taken by them without objection until February, 1878. The defendants did not generally allow this to be done by the agent for a longer time than a

year after maturity, and this custom was limited to the time that the agent should return the note to the company. Neither the plaintiff, nor Robert, her agent, had knowledge of the limitation on Moore's authority to receive premiums after due, and bind the company, but, on the contrary, rightfully supposed and had reason to believe from the course of dealing, till February 12, 1878, that Moore had such authority, and that the company would receive money paid on premiums past due for such a time after maturity, at least, as Moore requested payment and accepted money paid on his request, as had been done prior to February, 1878.

The premium due August 9, 1876, was paid in the usual manner, partly in cash, and the remainder ($55.49) by note payable February 9, 1877. No part of the note was paid at maturity. Robert, after being notified at different times, paid $25 to Moore June 12, and on further notice, $15, July 23. Moore, without further notice to Robert, returned the note to the company soon after August 9, 1877, and endorsed the money received June 12 and July 23 on a note held by himself against Robert, and not on the note for $55.49, as he ought. The plaintiff's policy remained in this condition until February 11, 1878, when Moore called on Robert at Lake Village for the money past due, and told him if it was not paid at once all would be lost. On the next day Robert called on Moore at his office in Concord, and asked for a statement of the amount then due. Moore gave him a statement showing the amount due to be $198.84, which included the note due February 9, 1877, and interest, and no credit was given for the sums of $25 and $15 paid in June and July, 1877. Robert thereupon paid Moore $100, and received from him the following receipt:

"CONCORD, N. H., Feb. 13, 1878.

"Received of R. M. Appleton one hundred dollars on account of Sarah Appleton's policy, No. 46,489, the same to be credited to payments due Feb. 9, Aug. 9, 1877, and Feb. 9, 1878, all of which are past due.

C. W. MOORE, *Gen. Ag't.*"

After the receipt (which was post-dated by mistake) was delivered to Robert, Moore informed him that the policy had lapsed, and was void; that he had returned the note due February 9, 1877, to the company; that he would not try to do anything for the renewal of the policy unless he was paid the balance of $98.84, and then it would be doubtful whether the company would renew it without a satisfactory medical reëxamination, but he thought they would if Robert would pay over the balance ($98.84) at once, and he would do the best he could to procure a renewal.

Until this information was given, Robert supposed that on payment of the money past due it would be received as it had been, as he had received no notice to the contrary. On receiving the

above information, he arranged with Moore to pay him the balance of $98.84, and did so on the next day, Moore agreeing to present the claim to the company for the application of the money and a continuance of the policy without a medical reëxamination, which Robert desired to avoid that his mother might not know that there was trouble about her policy. If Moore could not obtain a renewal without a reëxamination, then Robert was to get one from England, and if that should not be satisfactory, the money ($198.84) was to be returned to him.

Moore notified the company that all past dues had been paid, and that the assured was in good health, and endeavored to get the policy revived, but the company declined. Robert then applied to the president to have the money applied and the policy continued without a reëxamination, and if refused, for a return of the money. The defendants refused to continue the policy, and kept the money. Robert then obtained a medical reëxamination of his mother, but the defendants thought she was not then a good risk, and refused to put the policy in force. Robert again demanded the money ($198.84), but it was not returned to him, and never has been, and no reason was assigned for not refunding it until the trial. The money was not paid over by Moore to the company, but remained in his custody. When paid, it was the money of the plaintiff Sarah, and was received by Moore as the general agent of the defendants for their use if they elected to hold it for the premiums named in the statement and receipt of February, 1878; and the referee finds that the defendants wrongfully withheld the money when demanded, unless it continued the policy in force, and intended that the assured and Robert should understand that it was retained for the payment of all premiums to August 9, 1878. The assured offered the policy to the defendants July 23, 1878, and requested a paid-up policy.

The plaintiffs claimed (1) that from the course of business and custom the defendants are estopped to deny that the policy was continued in force till the demand for a paid-up policy was made; (2) that if there was a technical forfeiture August 9, 1877, it was waived; and (3) that the policy by the payments of February 12 and 13, 1878, was continued in force till August 9, 1878.

The defendants claimed that the policy lapsed and became void February 9, 1877.

*S. C. Eastman,* for the plaintiffs.

*Rand* and *S. G. Lane,* for the defendants.

SMITH, J. The fact is established by the report of the referee, that prior to February 12, 1878, the plaintiff rightfully supposed and had reason to believe, from the defendants' course of dealing with her, that Moore had authority to receive premiums overdue,

and that the defendants would receive the money so paid for such time as Moore should accept money paid on his request.  The policy by its terms became void February 9, 1877, for non-payment of the note falling due on that date, unless the forfeiture was waived by the defendants.  This condition was inserted for their benefit, and could of course be waived by them at their pleasure; and the facts reported show that the defendants did not intend to insist upon the prepayment of the premiums as a condition precedent. Forfeitures are not favored in the law, for they are often the means of oppression and injustice.  *Insurance Co.* v. *Norton*, 96 U. S. 234, 242.  Courts are prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the assured has relied and acted—*Insurance Co.* v. *Eggleston*, 96 U. S. 572, 577; and a forfeiture will not be enforced except where the evidence is clear that such was the intention of the parties—*Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 27, *Helme* v. *Philadelphia Life Ins. Co.*, 61 Pa. St. 107, *Buckbee* v. *U. S. Ins. & Tr. Co.*, 18 Barb. 541, and May Ins., s. 361; and a waiver may be inferred from any circumstances which show that both parties understood the payment of a premium when due would not be required.  *Currier* v. *Insurance Co.*, 53 N. H. 538, 549–552; May Ins., s. 360; *Heaton* v. *Manhattan Fire Ins. Co.*, 7 R. I. 502; *Goit* v. *Nat. Prot. Ins. Co.*, 25 Barb. 189; *Hodsdon* v. *Guardian Life Ins. Co.*, 97 Mass. 144.

The defendants' course of dealing having been such as to induce the belief in the plaintiff that they would not insist upon the stipulation in the policy for a forfeiture for non-payment of premiums when due, the ordinary principles of estoppel apply.  The defendants are estopped to claim that the plaintiff's policy had lapsed prior to February 12, 1878.  *Meyer* v. *Knickerbocker Life Ins. Co.*, 73 N. Y. 516; *Horn* v. *Cole*, 51 N. H. 287.  Indeed the doctrine of waiver as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel.  *Insurance Co.* v. *Wolff*, 95 U. S. 326, 333.  It will be observed that when Moore called upon the plaintiff's agent, February 11, for the money then due, and informed him that if it was not paid at once "all would be lost" (meaning, as we understand, that the policy would become void), no claim was made that the policy had already lapsed.  The claim was then made for the first time that further delay in the payment of the premiums due would work a forfeiture of the policy.  After July 23, 1877, no request was made for the balance of the premium due August 9, 1876, nor for the premium due August 9, 1877, until February 11, 1878.  When the plaintiff was informed on the latter date that immediate payment was necessary to prevent a forfeiture of the policy, it became her duty to act promptly. The whole amount of arrearages claimed was paid within the next two days, no credit being given for the sums of $25 and $15 paid

in June and July, 1877. If the defendants intended to insist on the forfeiture of the policy, the rules of good faith and fair dealing required that the plaintiff's agent should have been so informed before he made the payment of $100 ; otherwise the defendants would be demanding and receiving money to which they had no claim, and for which the plaintiff would receive no benefit. Not till the payment of $100 had been made and the receipt therefor delivered, was her agent informed of the defendants' claim that the policy had already lapsed. The defendants' conduct having been such as to induce the plaintiff's action in reliance upon it, if the defendants could elect to treat the policy as lapsed without giving her a reasonable opportunity to pay the balance due, it would operate as a fraud upon her. The receipt of the sum of $100, February 12, without objection, to be credited to premiums past due, no purpose of claiming a forfeiture being made known, shows that the plaintiff had been induced to delay the prepayment of premiums by the defendants' course of dealing with her. It would be a fraud upon the plaintiff, after being put off her guard, not to be permitted a reasonable opportunity to pay the premiums overdue—*Meyer* v. *Insurance Co.*, 73 N. Y. 516, 527 ; and there can be no claim that she did not act with reasonable promptness after the defendants' change of purpose was made known February 11.

When the defendants claimed, February 12, 1878, that the policy had already lapsed, and proposed that the plaintiff should pay up the premiums in arrears, and give them the option of reviving the policy or refunding the money if the result of a medical reëxamination should not be found satisfactory, the plaintiff might have stood upon her legal rights, and insisted that the policy had not lapsed for the reason that prepayment of premiums had been waived. She however assented to the proposition, and thereby waived her right to insist that the defendants were estopped to claim that the policy had lapsed for non-payment of premiums in advance. Under this new contract Robert paid the balance of premiums in arrears February 13, and procured and furnished a medical reëxamination of the plaintiff which the defendants pronounced unsatisfactory, and declined to revive the policy. The plaintiff then demanded the repayment of the money paid February 12 and 13, agreeably to the terms of the alternative agreement, and the defendants declined to refund the money. The defendants having refused to perform either alternative of the contract, the plaintiff became entitled to treat the contract as rescinded by the defendants and entitled to be reinstated in the position in which she stood when the contract of February 12 was entered into. The defendants cannot set up the contract which they have violated, as a waiver by the plaintiff of the estoppel against the defendants arising from their usage and course of dealing with her. *Meyer* v. *Insurance Co.*, 73 N. Y. 516, 527. Nor can they set up the contract which

they have violated as a means of destroying previous rights of the plaintiff given up and waived by the contract which the defendants have refused to perform. *Danforth* v. *Dewey*, 3 N. H. 79; *Fuller* v. *Little*, 7 N. H. 535; *Luey* v. *Bundy*, 9 N. H. 298; *Snow* v. *Prescott*, 12 N. H. 535; *Drew* v. *Claggett*, 39 N. H. 431; *Chamberlin* v. *Perkins*, 55 N. H. 237, 241.

The plaintiff is not confined to her suit at law to recover back the money paid. That is not her only remedy. She may elect to become restored to the position occupied by her when called upon to pay the premiums in arrears, which was, that the defendants were estopped by their course of dealing with her and her agent to claim that the policy had become forfeited.

*Decree for the plaintiff.*

BINGHAM and ALLEN, JJ., did not sit: the others concurred.