Belknap, }
Dec., 1897. }

## DUNN, *Adm'r*, *v.* NATIONAL LIFE INSURANCE CO.

Where a life insurance policy specifies the manner in which premiums are to be paid, provides that failure to pay them when due shall work a forfeiture, and stipulates that agents have no authority to extend the time of payment, a waiver of these conditions may be inferred from evidence of a course of dealing inconsistent therewith between the company's agent and the insured, and a like course of dealing with other policy-holders.

An insurance company will be bound by its agent's extension of the time limited for the payment of premiums, if such act was within the apparent scope of his authority.

ASSUMPSIT, upon an insurance policy on the life of Nellie E. Crockett. Verdict for the plaintiff. The policy, dated December 24, 1895, provides that a premium of $13.05 shall be paid to the defendants on or before the twenty-fourth day of December, March, June, and September in each year during the continuance of the contract until twenty annual premiums have been paid; that "failure to pay any premium or any part thereof . . . when due shall cancel the insurance" and the contract; that "all premiums are payable at the home office in Montpelier, Vermont, but will be accepted when paid to agents of the company in exchange for its receipts, signed by its president or secretary"; and that "agents are not authorized to extend the time of payment of any premium and cannot give credit, make, alter, or discharge contracts, nor waive forfeitures."

The plaintiff's evidence tended to show that the company had a general agent at Manchester, through whom all business with its policy-holders in this state was transacted; that A. T. Roberts was a sub-agent to solicit applications for insurance and collect premiums upon policies issued upon such applications, receiving for his services a percentage upon the premiums collected; that receipts for premiums were made out at the home office, a month in advance of the times when the premiums became due, and were sent to the general agent; that the receipts pertaining to Roberts' sub-agency were countersigned by the general agent and forwarded to Roberts; that on the tenth day of each month, the general agent and Roberts, through him, reported to the company the collections made during the preceding month; and that the company had no means of knowing whether the premiums were paid when due except from these reports.

The policy in suit was procured through Roberts. Evidence introduced by the plaintiff, subject to exception, tended to show

that when Roberts solicited the application for the insurance, and also after the delivery of the policy, he told the insured he would call upon her to collect the premium, and she must be sure to have it ready for him; if he did not call by the day it was due, it would make no difference,— it could be paid to him any time within thirty days, and he would call in season; and if she died within the thirty days, the insurance, less the premium, would be paid by the company. Also, that Roberts had made similar statements to other policy-holders and that, in the case of one, remittances for premiums several days past due had been accepted by the general agent without question, several times. Roberts testified that he had no authority to collect premiums after they were overdue. The insured lived in Laconia and could not read or write. Roberts did not live in Laconia nor have an office there.

The insured had the money in readiness to pay the premium due March 24, 1896, and kept it on hand for the purpose until about a week before she died, when it was used by her daughter for household expenses. She died April 17, 1896. Roberts never called for the premium. The day before her death, it was sent to the home office, but did not reach there until after the death occurred, and the defendants declined to receive it.

The defendants moved for a nonsuit, which was denied, subject to exception.

*Frank M. Beckford, E. A. & C. B. Hibbard,* and *Walter S. Peaslee,* for the plaintiff.

*Jewett & Plummer,* for the defendants.

CHASE, J.    Although premiums were payable at the home office of the defendants, they were to be accepted " when paid to agents of the company in exchange for its receipts, signed by its president or secretary." In other words, they were payable either at the home office or to the company's agents having proper receipts for the same. It was essential that each person insured should definitely understand which method of payment was adopted in his case; and if it was the latter method, whether the agent was to call on him for payment, or he was to tender payment to the agent wherever found, or at some designated place. Uncertainty as to this matter would necessarily tend to prevent the making of payments when due and subject the insured to the liability of unwittingly losing his insurance. It is not presumed that the defendants intended that there should be such liability. On the contrary, it appears that they attempted to remove the uncertainty in respect to their New Hampshire business, at least, by providing their agents residing

in the state with receipts for premiums and making the collections through them. The sending of the receipts to the agents, in connection with the provisions of the contract, tended to show that the defendants authorized the agents to make all necessary arrangements with the insured for the payment of the premiums to the agents. It would justify the jury in finding that Roberts was authorized to direct the insured in this case not to send the premiums becoming due upon her policy to the home office, but to pay them to him in exchange for receipts with which he would be furnished; and further, to promise, in behalf of the defendants, to call on her in season to enable her to make the payments when due. There was also evidence tending to show that the agents were authorized to allow some grace in the making of payments. The defendants had no means of knowing whether the premiums were paid promptly except from the agents' reports, which were made on the tenth day of each month for the preceding month. This afforded the agents an opportunity to grant some indulgence. In the case of one policy, at least, the general agent accepted the payment of overdue premiums several times without question. This evidence was competent, in connection with the other evidence, to show the defendants' course of business. Roberts' denial that he had authority to collect overdue premiums was not conclusive on the point. The jury might find, from a consideration of all the evidence, that Roberts' assurance to the insured that her policy would not be avoided by his neglect to seasonably present the receipts to her for payment, was authorized by the defendants. Such neglect would be his fault and, as it would occur in the execution of apparent authority conferred by the defendants, it would be attributable to them. *Deming* v. *Railroad*, 48 N. H. 455, 472; *Nixon* v. *Brown*, 57 N. H. 34. Even if he attempted to extend grace beyond the limits of his authority, the defendants instead of the insured should suffer the loss occasioned thereby; for, " when one of two innocent persons is to suffer, he ought to suffer who misled the other into the contract by voluntarily placing the agent in a situation of apparent authority." The insured relied upon Roberts' representations in regard to the payment of premiums. She had the money on hand at the appointed time and kept it for some time afterward. If it was found that Roberts had authority to make the representations and that the insured relied upon them, the defendants would be estopped from setting up the provisions of the policy relating to forfeiture, to defeat the plaintiff's action. *Appleton* v. *Insurance Co.*, 59 N. H. 541, 544, 545.

The evidence excepted to was competent and, in connection with the other evidence, was sufficient to warrant the denial of the defendants' motion for a nonsuit.

*Exceptions overruled.*

Parsons, J., did not sit : the others concurred.