Coös,
Nov. 6, 1917.

ERNEST D. KILGORE, *by his guardian,* ISABELL KILGORE,

*v.*

THE LOYAL PROTECTIVE ASSOCIATION.

A waiver implies either a declaration in express terms to forego a right, or conduct justifying the inference of its relinquishment.

The fact that an insurer believed that a policy had been legally canceled does not warrant the conclusion that the insurer intended to waive any condition of the policy in the event that the cancelation should be void by reason of the assured's insanity, of which the insurer was justifiably ignorant.

Payment of an insurance premium, not being required to be the personal act of the assured, may be performed by others, and hence his insanity does not ordinarily excuse payment.

ASSUMPSIT, upon a policy of insurance. Trial by jury and verdict for the plaintiff. At the close of the plaintiff's evidence the defendant moved for a nonsuit; the motion was denied and the defendant excepted.

The plaintiff's evidence tended to prove the following facts. On July 22, 1904, Ernest D. Kilgore applied for membership in the defendant association, a fraternal organization whose object was to protect its members by insurance. On July 28, 1904, a policy of insurance was issued to Kilgore, "upon the conditions precedent that" he "shall pay on the first business day of March, June, September and December in each year during the continuance of this contract the estimated amount of $3." Among other benefits provided for in the policy, the defendant agreed to pay the insured certain specified sums each week during his total disability, not exceeding one hundred and four weeks. All the dues were paid up to and including those of December 1, 1912, which were paid by Mrs. Kilgore. The insured was taken sick on November 3, 1912. The nature of his sickness was excessive blood pressure, or hypertension, and notice of it was sent to the defendant on the following day. The insured was totally disabled in consequence of his sickness and became mentally incapable of doing business, and was in that condition in the following February when the insured made proof of claim for total disability for fourteen weeks. In reply to a letter by the defendant he wrote that "it is my understanding that the settlement of my claim would be in full for all this disability." Thereupon the defendant paid the amount claimed and the unearned premium for the remainder of the month, and canceled the policy. The insured's disability continued for the full period of one hundred and four weeks specified in the policy. The dues that became due according to the terms of the policy on March 1 were not paid or tendered, and the defendant had no knowledge of the insured's mental condition at the time of the settlement, until January 12, 1914, when Mr. Libby, an attorney whom Mrs. Kilgore had consulted, wrote to the defendant stating the fact of the insured's insanity and claiming that the settlement was for that reason invalid. Several letters passed between Mr. Libby and the defendant, in one of which the defendant stated that it refused to waive any of its rights. Other facts appear in the opinion. Transferred by *Chamberlin*, J., from the December term, 1916, of the superior court.

*Ovide J. Coulombe*, for the plaintiff.

*Fred C. Cleaveland* and *George F. Rich*, for the defendant.

Walker, J. The defendant and the insured undertook by their

negotiations in February, 1914, to terminate the policy and to adjust and settle the defendant's liability thereunder. The cancellation of the policy resulted from the contract of settlement, and not from the exercise by the defendant of its reserved right, evidenced by the policy, to terminate its liability at any time except when the insured is suffering from a disability entitling him to indemnity. The settlement was in form at least a termination of the contract. If the insured had been in a normal condition, as the defendant was justified in assuming he was, no doubt could be entertained that his request for and assent to the cancellation would be binding upon him, in the absence of fraud or imposition on the part of the insurer. There is no evidence that the defendant intended to mislead the insured in the attempted settlement, or knew or was chargeable with knowledge that he was not in a normal mental state and fully competent to make a binding contract. Nor is there any evidence that any agent of the defendant personally conferred with him at the time and might have observed indications of his mental incapacity. In fact, it is not denied that the negotiations were all carried on by correspondence and in the ordinary course of business. Ordinarily there is no presumption of insanity. *Pettes* v. *Bingham*, 10 N. H. 514.

Whether the contract for terminating the policy was absolutely void on account of the insanity of the insured, or merely voidable at his election or that of his duly constituted representative (*Young* v. *Stevens*, 48 N. H. 133; *Hall* v. *Butterfield*, 59 N. H. 354), is a question that need not be discussed. For, if it is assumed in accordance with the contention of the plaintiff and the practical concession of the defendant, that the insanity of the insured rendered the settlement absolutely void, it did not relieve him from the duty of paying or tendering the dues that, under the policy, became payable on March 1, 1914. It did not give him greater rights against the company than he had before. The only effect of the void settlement was to leave the policy in force until March 1, when by the payment of the dues it could be renewed for another period of three months.

The insured's insanity did not render the payment of dues impossible. It might have been made by his wife, the plaintiff, who it appears understood the terms of the policy and acted as his adviser and agent in regard to the insurance. Payment of insurance premiums is not necessarily the personal act of the insured. 2 May Insurance, *s.* 353, *note* 3. In case of his disability it may be per-

formed by others. Hence, ordinarily, insanity does not excuse the failure of the insured to pay the premiums when due.

By the terms of the policy the payment of the prescribed dues on the specified dates was what is termed a condition precedent. It is an act the performance of which is essential to a recovery on the policy. The insured assented to this provision of the policy and it became a material part of the contract. The plaintiff is therefore bound by it in the absence of a valid excuse for its non-performance. *Johnson* v. *Casualty Co.*, 73 N. H. 259; *Gagne* v. *Insurance Co.*, *ante*, 439. No attempt was made by the insured or by any one in his behalf to pay the March dues. No tender of them was made, and the only excuse for his failure in this respect is that the defendant had waived the payment of the dues by the cancellation of the policy. But the difficulty with this argument is that it does not appear that the defendant was called upon to take any position upon this subject, or that it intended to waive its rights to insist upon this condition of the policy, or that it affirmatively did anything to induce the insured to understand that it had such an intention. The mere fact that it probably believed at that time that the policy had been legally canceled does not warrant a finding that it intended to waive any condition of the policy, if it should afterwards be made to appear that the cancellation was invalid in consequence of the insured's insanity, of which it was justifiably ignorant. Its silence under the circumstances cannot justify a finding that it intended to waive any of the provisions of the policy, and rely solely upon the defence of cancellation, or that the insured was in any respect misled thereby. "As they did not cause him to believe, or to change his position in the belief, that they waived the limitation" (*Tasker* v. *Insurance Co.*, 59 N. H. 438, 445) the defendant is not estopped to insist upon a forfeiture for the non-payment of the dues. 2 May Insurance, ss. 506, 507.

The case of *Seely* v. *Insurance Co.*, 72 N. H. 49, upon which the plaintiff relies, is clearly distinguishable from the present case. In that case there was a distinct and unequivocal statement by the defendant, in reply to the plaintiff's request for blank proofs of death, that "no proofs were needed — that the policy had lapsed for non-payment of premiums." This statement was obviously sufficient evidence of an intentional waiver of the defendant's right to insist upon proofs of death as a condition precedent. But it is not an authority that the defendant's silence in the present case, when under no duty to speak, is evidence of a waiver. A waiver, ordi-

narily, is based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it.

It does not arise in the absence of evidence of such an intention or such conduct. To hold that one by his silence may relinquish contractual rights in consequence of facts of which he is justifiably ignorant, would be to judicially disregard the obligations of the contract without his assent express or implied. As the policy did not continue in force after March 1, when the dues should have been paid, the plaintiff is not entitled to recover for disability existing after that date. The motion for a nonsuit should have been granted.

*Exception sustained: verdict set aside: judgment for the defendant.*

PARSONS, C.J., PEASLEE and PLUMMER, JJ., concurred: YOUNG, J., dissented.