Hillsborough,  
March 3, 1925.

## ESTHER DALEY & a. v. METROPOLITAN LIFE INSURANCE COMPANY.

To establish a waiver of a condition in an insurance policy there must be evidence of such a course of dealing on the insurer's part as to induce a reasonable belief by the insured that the condition has in fact been waived.

A life insurance company having authorized agents to accept premiums at any time within thirteen weeks after they became due, their acceptance on several occasions at times within the limit of thirteen weeks cannot be construed as a waiver of the clause in the policy declaring it forfeited on non-payment of premiums when due, so as to entitle the insured to reinstatement of the policy by tender of premiums more than thirteen weeks overdue.

If the insured knew of the extension of time for payment of premiums to thirteen weeks after their due date, acceptance of premiums within that period could not induce a belief that payment within that period had been waived.

If the insured did not know of the extension, acceptance of premiums from four to eight weeks overdue could not induce a reasonable belief by the insured that the insurer had waived payment for as long a period as fifteen weeks.

A charge correctly stating the law as to waiver is erroneous when there is no evidence to sustain a finding of waiver. In that situation the jury should be instructed that no waiver can be found. If the verdict for the plaintiff may have been based on instructions inapplicable to the evidence, it cannot be sustained.

The fact that an alleged transaction is a departure from custom or rules may be shown in denial of it.

When evidence is excluded on the ground of remoteness, the finding is subject to exception on the question whether it could properly be made.

If evidence has such impressive force that reasonable men would all agree that it is important, it cannot be found to be remote.

ASSUMPSIT, for the proceeds of a policy insuring the life of Margaret Daley. Trial by jury before *Kivel*, C. J., and verdict for plaintiffs. The policy, issued in 1913, provided for the payment of weekly premiums of forty cents, with "a grace of four weeks" to be "granted for the payment of every premium after the first, during which time" the policy was to continue in force. It also provided for a revival after forfeiture for non-payment of premiums, upon payment of all arrears and proof of good health. After the policy was issued the defendant authorized its agents to collect premiums in one sum when not over thirteen weeks in arrears. The last premium was paid Monday, June 28, 1920, and Margaret died Monday, October 11, 1920. Premiums were paid several times and accepted when from four to eight weeks overdue. A tender of payment of premiums in

arrears two days before Margaret died, made in her behalf, was refused. An agent of the defendant testified that two or three weeks before she died he tried to get her to pay the overdue premiums, that she then said she was unable to pay but would do so later and that he explained to her that the policy was "out of benefit" by reason of her non-payment of premiums. Transferred on exceptions to the denial of a directed verdict on the issue of waiver, exclusion of evidence, argument and charge.

*Banigan & Banigan (Mr. Edward W. Banigan* orally), for the plaintiffs.

*Branch & Branch (Mr. Frederick W. Branch* orally), for the defendant.

ALLEN, J. The policy by its terms would have become forfeited for non-payment of premiums four weeks after June 28, 1920, but for the extension of the grace period to thirteen weeks, which kept it in force until September 27. It is conceded that the tender of October 9 could not operate to reinstate the policy under the revival clause since the insured's condition at that time precluded compliance with the requirement of proof of good health. The tender was therefore too late unless there was a waiver of the time limit, and the exception relative to a directed verdict presents the question whether there was evidence of such a waiver. There was no waiver in the sense that the defendant intentionally relinquished its rights, and strictly the question is of estoppel to deny a waiver. "The doctrine of waiver as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel." *Appleton* v. *Insurance Co.*, 59 N. H. 541, 545. To determine an apparent as thus distinguished from an actual waiver, the test is whether the insurer's course of dealing is such as to induce a reasonable belief on the plaintiff's part of a waiver in fact. *Appleton* v. *Insurance Co., supra; Dunn* v. *Insurance Co.*, 69 N. H. 224; *Lally* v. *Insurance Co.*, 75 N. H. 188; *Langlois* v. *Association*, 79 N. H. 264.

The eight occasions during the life of the policy when premiums four to eight weeks in arrears were paid and accepted were applications of the thirteen weeks' extension and could induce no reasonable belief that the forfeiture was thereby postponed beyond the extension. These payments were within the established limit by a

substantial margin of time and carried no implication either that there was no limit or that it was somewhere beyond the limit established. A waiver by either words or conduct does not extend beyond their fair meaning. The four weeks of grace given by the policy defined the limit, and the extension to thirteen weeks defined the limit of the extension. A waiver up to a certain mark waives nothing beyond it, and the extreme period allowed imported no allowance of even greater extremes.

Whether the insured knew of the thirteen weeks' extension is problematical. Neither the overdue payments made nor the testimony about the agent's talk with her two or three weeks before she died nor the tender just before she died throw more than equivocal light on her understanding. If she did not know about it, the acceptance of the overdue payments made did not imply a waiver of a lapse when the payments were almost fifteen weeks in arrears. If she did know of it, then there is nothing to show she might exceed the extension, since all of the overdue payments were within it.

In *Lally* v. *Insurance Co., supra,* the period of nonpayment was not longer than any previous period in which payments had been waived. In *Dunn* v. *Insurance Co., supra,* the period was less than the time the waiver gave. And in *Langlois* v. *Association, supra,* the waiver was always of a definite period never exceeded.

The testimony of the talk between the insured and an agent two or three weeks before she died referred to a time antedating the expiration of the thirteen weeks' extension period. Only a summary of the testimony is transferred. According to it, she was told in effect she must pay then to keep the policy in force. Telling her it was not too late then was not telling her it would not be two or three weeks later, regardless of the warning testified to as given her. The testimony would seem to indicate adherence to, rather than a waiver of, the limit of the extension period.

But if any inference of its purport may be made other than that she was told it would be too late if she did not then pay, there is nothing to show any implied or apparent authority of the agent to waive the thirteen-week extension. No waiver beyond the authorized limit had previously been given, and the defendant had done nothing which would reasonably give the insured to think the agent had authority to give her as much time as she took. Even if it be assumed she could be found ignorant of the extension limit, the authority to waive as disclosed by the acceptance of premiums not over eight weeks overdue furnished no evidence of authority to waive

for nearly twice as long. Acceptance of premiums eight weeks overdue was no more an indication of the agent's authority to waive for a longer period than it was of the defendant's consent to such a waiver.

In *Dunn* v. *Insurance Co., supra,* evidence of both the agent's actual and apparent authority to waive the time limit for paying premiums for a brief period appeared from the course of dealing and other conduct of the defendant; and therein it materially differs from the case here, where such evidence is not to be found.

The evidence therefore has no tendency to show any conduct chargeable to the defendant which would reasonably induce anyone in the insured's place to think the policy might continue in force for fifteen weeks, lacking two days, without paying any premiums. The defendant at all times kept within the limits it set up and indicated no purpose or consent to disregard them. It did nothing entitling the insured to believe it waived the limitation. There is nothing which shows any waiver or estoppel to deny waiver. See *Tasker* v. *Insurance Co.,* 59 N. H. 438, 445; *Kilgore* v. *Association,* 78 N. H. 498.

While the charge correctly stated the rule of law, it was erroneous because it authorized the jury to make a finding not based on any evidence which would sustain it. The defendant was entitled in place of the instruction given to one that no waiver of the lapse under consideration was to be found. Since it is uncertain whether the verdict was based on an improper finding of waiver or on a finding that payment of the premium had been made by anticipation, it must be set aside. When a rule given to the jury for a decision of the case is inapplicable upon the evidence, the verdict is not to be sustained if it may have been rendered in pursuance of such an instruction. *Moody* v. *Perley,* 78 N. H. 17.

Besides the claim of waiver, the plaintiffs claimed payment of the premiums up to the decedent's death by anticipation, through an arrangement alleged to have been made nearly four years prior to her death by which policies on the lives of two of her minor children were canceled with a continuance of payment of the premiums thereon so as to create a sinking fund out of which the premiums on her own policy might be paid on occasions when her regular payments might be interrupted. It was alleged the arrangement was made with an agent of the defendant who collected premiums.

In disproof of such an arrangement the defendant offered evidence, which was excluded, subject to exception, that it would not have

permitted the arrangement. The evidence was relevant and should have been admitted. That the alleged arrangement was contrary to the practice of the defendant and would not be permitted, clearly tended to show it was not made. It furnished a reason from which it might be inferred the transaction did not take place.

The fact that an alleged transaction is a departure from custom or rules may be shown in denial of it. "When there is a question whether a particular act was done, the existence of any course of office or business, according to which it naturally would have been done, is a relevant fact." *State* v. *Shaw*, 58 N. H. 73; *Hall* v. *Brown*, 58 N. H. 93, 96. "It has repeatedly been held in this state that such evidence [of custom] is competent, upon the ground that 'a person is more likely to do or not to do a thing, or to do it or not to do it in a particular way, as he is in the habit of doing or not doing it.' *State* v. *Railroad*, 52 N. H. 528, 549, 550." *Davis* v. *Railroad*, 68 N. H. 247, 248, 249.

In *Wright* v. *Davis*, 72 N. H. 448, it was held, on the issue whether a promissory note was given for a loan, that the maker's bank accounts at the time of giving the note were relevant and competent evidence in disproof of the loan.

If it be assumed the evidence was excluded because deemed remote (*Boulanger* v. *McQuesten*, 79 N. H. 175; *Kier* v. *Parks*, 79 N. H. 67), yet the exception was well taken. While such evidence may be subject to exclusion for remoteness (*Fuller* v. *Railroad*, 78 N. H. 366, 369), or because the facts relating to a transaction are fully shown or described by direct evidence (*Bourassa* v. *Railway*, 75 N. H. 359; *State* v. *Currier*, 79 N. H. 171), yet when it appears the evidence cannot be considered remote, it is to be admitted. While the question of remoteness is one of fact and discretion (*Kier* v. *Parks*, *supra; State* v. *Small*, 78 N. H. 525, 529), the finding is nevertheless subject to exception on the inquiry whether it could have been properly made. *State* v. *Wren*, 77 N. H. 361, 364; *St. Laurent* v. *Railway*, 77 N. H. 460, 462; *Ingerson* v. *Railway*, 79 N. H. 154, 159.

When relevant evidence has such force and weight as necessarily to be of aid to the trier, it is necessarily admissible. Calling it remote does not make it so. Remoteness involves unimportance, and if evidence has such impressive force that reasonable men would all agree it is important, it cannot be found to be remote.

Instead of the case showing anything on which to support a finding of remoteness of the excluded evidence, it is conclusive of an opposite result. The question is not how, but if, something happened. An

inconsistent practice and rule clearly has such logical weight and force that the trier should not be deprived of knowledge of it in passing on the question. There being a direct conflict of evidence whether or not the alleged arrangement for anticipating payments of the premiums was made, evidence that the defendant had a practice and rule against the arrangement must be of importance. There is nothing to show it would not help the trier, and it is of material assistance in throwing light on the issue.

Consideration of the other exceptions appears unnecessary.

*Exceptions sustained: verdict set aside.*

All concurred.