NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

U.S. District Court for the District of New Hampshire
Case No. 2023-0018
Citation: Private Jet Servs. Grp. v. Tauck, Inc., 2024 N.H. 20

PRIVATE JET SERVICES GROUP, LLC

v.

TAUCK, INC.

Argued: October 17, 2023
Opinion Issued: April 23, 2024

Shaheen & Gordon, P.A., of Concord (Timothy J. McLaughlin and Olivia F. Bensinger on the brief, and Timothy J. McLaughlin orally), for the plaintiff.

The Ment Law Group, P.C., of Hartford, Connecticut (Jeffrey L. Ment on the brief and orally), and Michael F. Merra, of Amherst, on the brief, for the defendant.

DONOVAN, J.

[¶1] Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (McAuliffe, J.) certified the following question of law for our consideration:

Whether, under New Hampshire's common law, a Force Majeure clause that protects only one party to a contract should be deemed a relinquishment of the other party's right to interpose the common law defenses of impossibility, impracticability, or frustration of commercial purpose, on the theory that the clause represents the parties' implicit allocation of the risks identified in the Force Majeure clause to that other (unprotected) party or, alternatively, whether the common law contract defenses of impossibility, impracticability, or frustration of commercial purpose are so fundamentally related to contract formation and purpose that they remain viable unless expressly waived.

[¶2] We conclude that the common law contract defenses of impossibility, impracticability, and frustration of commercial purpose are so fundamentally related to contract formation and purpose that they remain viable unless expressly waived. Accordingly, a force majeure clause that protects only one party to a contract should not be deemed, in and of itself, a relinquishment of the other party's right to interpose those common law defenses.

## I. Facts

[¶3] The following facts are taken from the district court's certification order and its order on the parties' motions for summary judgment. In January 2018, Private Jet Services Group, LLC (PJS), a New Hampshire-based private aircraft booking agent, and Tauck, Inc., a Connecticut-based provider of domestic and international guided tours, executed an "Air Charter Services Blanket Purchase Agreement" (BPA) that established the terms under which Tauck would book and pay for air transportation for the New Zealand portion of its Australia and New Zealand tours. The BPA contemplated that, before Tauck booked any aircraft through PJS, the parties would execute one or more Statements of Work (SOW) to address the details of the parties' relationship.

[¶4] In May 2018, the parties executed the SOW relevant to the instant dispute. Among other provisions, the SOW required Tauck to guarantee a minimum of fifty tours per year and to pay to PJS an agreed-upon sum for each "missed" tour. The SOW also amended the terms of the force majeure clause in the parties' BPA. As relevant here, the force majeure provision in the SOW provided that "PJS is not responsible for delays, losses or damages of any kind caused in whole or in part by Force Majeure," and the clause defined force majeure as including, among other things, "Acts of God, events of nature, epidemics, [acts of] civil or military authority, . . . [and] travel advisories of the Department of State of the United States of America."

[¶5] Beginning in March 2020, the COVID-19 pandemic prevented Tauck from conducting tours in New Zealand. After Tauck cancelled its remaining 2020 tours, the parties unsuccessfully attempted to renegotiate their relative obligations under the contracts. In May 2020, Tauck invoked the "Adverse

Economic Conditions" provision contained in the SOW and terminated the parties' contracts in their entirety.

[¶6] PJS sued Tauck in the New Hampshire federal court alleging a breach of contract arising from, in pertinent part, Tauck's use of PJS's services for only twenty-three tours in 2020, which fell below the fifty-tour seasonal tour minimum. Tauck responded that the COVID-19 pandemic and New Zealand's related decision to close its borders to foreign travelers allowed it to properly invoke the doctrines of impossibility and frustration of purpose to excuse performance of its obligations under the parties' contracts.

[¶7] Both parties moved for summary judgment on the count relating to the 2020 tour season, and, in September 2022, the district court denied the motions without prejudice. In its order on the parties' motions for summary judgment, the district court explained that "the terms of the amended Force Majeure clause may have implicitly (but certainly not explicitly) assigned the risk of adverse events materially affecting contract performance related to epidemics, and the exercise of civil authority, to Tauck."

[¶8] However, the district court stated that "[w]hat is not clear under New Hampshire law . . . is whether by agreeing to the Force Majeure clause as written, Tauck waived its otherwise available contract defenses." More specifically, the district court explained that New Hampshire's law is unclear as to "whether a Force Majeure clause protecting just one of the parties necessarily allocates (by implication) the risks of such events to the other party to the extent of depriving that party of otherwise-available common law defenses, like impossibility of performance or frustration of purpose." In its discussion of the common law defense of frustration of commercial purpose, the district court determined that "[t]here can be little doubt that the COVID-19 pandemic, as it threatened New Zealand, was a 'thing of the same kind or nature' as an epidemic, and within the Force Majeure clause event described as 'epidemics.'"

[¶9] Based on the district court's determination that it is unclear under New Hampshire law whether the force majeure clause in the parties' agreements may implicitly operate to preclude Tauck from raising common law defenses, the district court certified this question to us, which we accepted on February 1, 2023. See Sup. Ct. R. 34.

## II. Analysis

[¶10] We begin by addressing the second part of the district court's question, which asks us to determine "whether the common law contract defenses of impossibility, impracticability, or frustration of commercial purpose are so fundamentally related to contract formation and purpose that they remain viable unless expressly waived." For the reasons that follow, we

3

conclude that these common law defenses remain viable unless expressly waived.

[¶11] The parties' arguments primarily concern the issue of whether a force majeure clause protecting only one party should be deemed an allocation of risk to the other party, thus expressly precluding the unprotected party from raising the common law defenses of impossibility, impracticability, and frustration of purpose. PJS asserts that a contract "does not have to state plainly that the parties waive the ability to invoke the affirmative defenses of impossibility, impracticability, or frustration of purpose in order to explicitly waive them." PJS reasons that a contractual allocation of risk, such as a force majeure clause, "explicitly waives the invocation of the defenses of impossibility, impracticability, or frustration of purpose" because such an allocation of risk defeats the element of unforeseeability required by the common law defenses at issue here. Tauck agrees that certain contractual provisions can waive common law defenses. However, it contends that the inclusion of a force majeure clause is not, in and of itself, "enough to constitute a waiver of common law rights," and that, in the case at hand, Tauck has not waived any of its common law defenses.

[¶12] Although the parties' arguments rely on both the facts of this case and the language of the contracts at issue, we limit our discussion to answering whether, as a matter of New Hampshire law, the defenses of impossibility, impracticability, and frustration of commercial purpose remain viable unless expressly waived. We have previously explained that a waiver is the voluntary or intentional abandonment or relinquishment of a known right. Therrien v. Maryland Cas. Co., 97 N.H. 180, 181 (1951). A waiver may be based upon an intention expressed in explicit language or upon conduct under the circumstances justifying an inference of a relinquishment of a known right. Id. at 182-83; Kilgore v. Association, 78 N.H. 498, 502 (1917) (explaining that a waiver "does not arise in the absence of evidence of such an intention or such conduct").

[¶13] To determine whether the common law defenses of impossibility, impracticability, and frustration of commercial purpose can be waived implicitly or whether an express waiver is required, we briefly discuss the history and role of these defenses in contract law. One of the essential purposes of contracts is "the elimination of some risks for each party in exchange for others." Mishara Const. Co., Inc. v. Transit-Mixed Con. Corp., 310 N.E.2d 363, 367 (Mass. 1974). "Each receives the certainty of price, quantity, and time, and assumes the risk of changing market prices, superior opportunity, or added costs." Id. Although until the late-nineteenth century, impossibility of performance did not provide a defense, Kel Kim Corp. v. Central Markets, Inc., 519 N.E.2d 295, 296 (N.Y. 1987), courts have since recognized that negotiating parties cannot anticipate all contingencies that may arise

4

during the period of contract performance.  See Northern Indiana Pub. Serv. v. Carbon County Coal, 799 F.2d 265, 276 (7th Cir. 1986).

[¶14] Thus, "a legitimate judicial function in contract cases is to interpolate terms to govern remote contingencies—terms the parties would have agreed on explicitly if they had had the time and foresight to make advance provision for every possible contingency in performance." Id.  Courts therefore recognize the doctrine of impossibility of performance and the related defenses of impracticability and frustration of commercial purpose "to supplement the defects of the actual contract in the interest of reason, justice and fairness." Opera Co. of Boston v. Wolf Trap Foundation, 817 F.2d 1094, 1099 (4th Cir. 1987) (quotation omitted).  The proper question in an "impossibility" case "is not whether the promisor could not have performed his undertaking but whether his nonperformance should be excused because the parties, if they had thought about the matter, would have wanted to assign the risk of the contingency." Northern Indiana Pub. Serv., 799 F.2d at 276.

[¶15] In New Hampshire, we have long recognized the doctrines of impossibility and commercial frustration.  See Wilson v. Clark, 60 N.H. 352, 353 (1880) ("The contract having become incapable of performance, both parties are released from its obligations."); Perry v. Company, 101 N.H. 97, 98 (1957).  We have explained that the doctrine of commercial frustration is similar to the doctrine of impossibility of performance in that both require extreme hardship in order to excuse the promisor. Perry, 101 N.H. at 98.  Whereas the impossibility doctrine requires that there be complete and permanent impossibility, Bower v. Davis & Symonds Lumber Co., 119 N.H. 605, 609 (1979), commercial frustration assumes the possibility of literal performance but excuses performance because supervening events have essentially destroyed the purpose for which the contract was made. Perry, 101 N.H. at 98; see also Gen. Linen Servs. v. Smirnioudis, 153 N.H. 441, 443 (2006).

[¶16] The defenses of impossibility, impracticability, and frustration of commercial purpose thus apply when there is no express language allocating risk.  See Northern Indiana Pub. Serv., 799 F.2d at 278.  "[L]ike most contract doctrines, the doctrine of impossibility is an 'off-the-rack' provision that governs only if the parties have not drafted a specific assignment of the risk otherwise assigned by the provision." Commonwealth Edison v. Allied-General Nuclear Serv., 731 F. Supp. 850, 855 (N.D. Ill. 1990).  Indeed, these common law defenses exist because some risks are "so unusual and have such severe consequences that they must have been beyond the scope of the assignment of risks inherent in the contract, that is, beyond the agreement made by the parties." Mishara Const. Co., Inc., 310 N.E.2d at 367; see also Wheelabrator Envirotech v. Mass. Laborers, 88 F.3d 40, 45 (1st Cir. 1996) ("The rationale justifying excuse arises only when an unexpected or non-bargained-for event makes performance so vitally different from that which the parties originally

5

contemplated, that the change in performance can be said effectively to have vitiated the consent of the parties."). To require performance under such unforeseen circumstances would "grant the promisee an advantage for which he could not be said to have bargained in making the contract." Mishara Const. Co., Inc., 310 N.E.2d at 367.

[¶17] Therefore, because the purpose of contract law is to allocate risks that might affect performance, Kel Kim Corp., 519 N.E.2d at 296, and because the common law defenses of impossibility, impracticability, and frustration of commercial purpose allocate risk when the parties have not expressly done so in their agreements, see Northern Indiana Pub. Serv., 799 F.2d at 278, we conclude that these defenses are so fundamental to contract formation and purpose that they remain viable unless expressly waived. We further conclude that a force majeure clause that protects only one party to a contract should not be deemed, in and of itself, a relinquishment of the other party's right to interpose those common law defenses on the theory that the clause represents the parties' implicit allocation of the risks identified in the force majeure clause to that other (unprotected) party. As noted above, although the parties' arguments rely on both the facts of this case and the language of the contracts at issue, we limit our response to the narrow question of law posed by the district court.

Remanded.

MACDONALD, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.

6