MARY MEYER, Respondent, v. THE KNICKERBOCKER LIFE INSURANCE COMPANY, Appellant.

A suit in equity, to have a policy of life insurance declared existing and in force, is maintainable where the insurer refuses to receive the premium when tendered, basing the refusal upon an unfounded claim that the policy has been forfeited and canceled.

Where, by the terms of a contract if a payment is not made by a certain day, a harm will come to one party and a benefit to another, and the amount of the payment required is, from the course of business of the parties, known only to the latter, who refuses to make known the amount or keeps silence as to it when asked, and in consequence the day goes by without payment being made, he cannot take a benefit from the lapse.

Defendant issued a policy of insurance to plaintiff upon the life of her husband ; by the terms of the policy it was forfeited by a failure to pay any annual premium on the day it fell due. Plaintiff was entitled to dividends which were applied towards the premiums ; in consequence of this and of the mode of dealing between the parties, plaintiff had no knowledge of the exact amount of premium for any year until advised, and it had been the habit of defendant to furnish each year before the premium became due a statement of the amount required. Plaintiff not having received a statement for the year 1874, wrote to the defendant asking for the requisite information, and inclosing a post-office order for what she supposed would be required. The letter was received by defendant in sufficient time before the premium for that year became due to have enabled plaintiff, had it been answered, to make the payment. Defendant did not answer until some three months after receipt of the letter, and then returned the order with a statement that the policy was canceled for non-payment of premium. Plaintiff thereafter tendered the amount due, which was refused. In an action to have the policy declared valid, *held*, that defendant could not claim the forfeiture, and the action was maintainable ; also that it was not necessary for plaintiff, after the refusal to accept the premium, to continue to make formal tenders of premiums on each succeeding pay-day, but that it was sufficient for the judgment to provide for the payment of past premiums, with interest from the time they fell due respectively.

[ (Argued April 18, 1878 ; decided May 21, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action in equity to have a policy of insurance issued by defendant to plaintiff upon the life of her husband, which the defendant claimed to be forfeited and canceled, declared to be existing and in full force.

The policy was issued March 20, 1867, through defendant's local agent at Buffalo. It provided for the payment of an annual premium of $200.44, "to be paid on or before the twentieth day of March, at noon, in every year during the continuance of this policy." The policy contained these provisions :

" This policy is with profits."

" The omission to pay the said annual premium on or before twelve o'clock, noon, on the day or days above mentioned for the payment thereof, or failure to pay at maturity any note (other than the annual premium note) given for premium, interest or other obligation on this policy, shall then and thereafter cause said policy to be void without notice to any party or parties interested herein.

" And it is further provided that in case said company shall, at any time, accept a payment of the premium upon this policy after the day when the same shall, by its terms, become due and payable, such acceptance shall not in any respect be deemed to enlarge the time for the payment of the annual premiums thereafter to become due upon said policy, or be deemed any evidence of a usage of said company to receive payments of premium after the same become due and payable by the terms of their policies.

" In case of loss, all unpaid notes given either by the insured or by others for the premium thereon, or other indebtedness of the insurer or insured, will be deducted from the sum insured, and where the payments made are less than the annual premium, the balance of premium remaining unpaid for the current year of this policy will be deducted."

The court found the following facts :

" That the plaintiff paid the premiums which became due on said policy from time to time up to and including the premium which became due on the 20th day of March, 1873 ;

that each of said annual premiums, with the exception of that which fell due on the 20th day of March, 1873, was adjusted and paid as it accrued in the manner following : $100 of each premium was acknowledged under the hand of the plaintiff's husband as a credit on such premium or a loan on said policy, to be deducted from said policy when it became a claim, meanwhile interest to be paid on such credit or loan annually in advance by the plaintiff, at the rate of seven per cent per annum during the continuance of said policy: $100.44 of each premium was paid in cash or partly in cash, and partly by the promissory notes of the plaintiff's husband, which promissory notes were all paid ; and there was also paid at the time each premium accrued the interest due on the total amount of such credits or loans then outstanding, representing the unpaid portion of the annual premiums, less such sums as had been deducted on account of dividends declared on said policy; that the premium paid for the 20th of March, 1873, was paid and adjusted according to the same mode of payment as the previous premiums, with the exception that the amount payable in cash was not paid in full on the 20th day of March, 1873, but was paid as follows : One quarter of the total amount, with an addition of interest imposed when premiums are paid in installments, was paid in cash, and for the remaining three-quarters, with such additional interest, three promissory notes were given to the defendant signed by Friedrich Meyer, the husband of the plaintiff; one payable in three months from date for the sum of thirty-six dollars ; one payable in six months from date for a like sum, and one payable in nine months from date for the sum of thirty-five dollars ; all of which notes were paid, the last note being paid directly to the defendant by means of a post-office money order, and payment in that form was accepted by the defendant without objection, which payment was so made in conformity with a previous arrangement with defendant.

That during the continuance of said policy, the defendant annually, with the exception of one or two years, declared,

out of the profits of its corporate business, dividends for the benefit of its policyholders. That such cash dividends as were declared on the policy above set forth were, with the consent of the plaintiff, applied in diminishing the amount outstanding against said policy as a claim against the same, and that each dividend was deducted at the time of the payment of the annual premium next succeeding the declaration of such dividends, at which time the defendants notified the plaintiff of the amount of the dividends to which she was entitled. That all of said annual premiums were paid to the agent of the defendant in the city of Buffalo. That as each premium became due, the defendant sent the renewal receipt therefor to said agent, who was authorized to deliver the same to the plaintiff in payment of said premium as specified in a statement made by defendant, and accompanying such receipt ; that said statement specified the amount of premium which was to be paid in cash, and the amount which was to be secured by a loan or credit note to be signed by the plaintiff's husband. That the statement so furnished annually by defendant was the only means the plaintiff had of knowing the exact amount which became due each year on her policy for premium and interest, as long as the annual premium was payable in the manner according to which it had been invariably adjusted by the parties ; and that the plaintiff paid each of said premiums in accordance with the information furnished her through such statement. That such agency of the defendant at the city of Buffalo was revoked by the defendant in the latter part of the year 1873, and since that time the defendant has had no agent at that place. That the defendant did not give any notice of the revocation of its said agency at the city of Buffalo to the plaintiff, or any one in her behalf. That defendant did not, on or prior to the 20th day of March, 1874, furnish to the plaintiff, or any one in her behalf, the usual statement above described of the amount due in cash on said policy on the 20th day of March, 1874, or any notice whatsoever of the amount due on that day, and did not furnish the annual

premium or loan note for the signature of the plaintiff's husband, and did not furnish information of the amount of dividend which had been declared on said policy in the year 1874, and prior to the twentieth day of March thereof; nor did it notify plaintiff in any way that the premium falling due on the 20th day of March, 1874, was required to be paid in a manner different from that according to which all the previous premiums had been paid, or that the usual statement would not be furnished to her. That on the 14th day of March, 1874, the husband of the plaintiff, in her behalf, having previously endeavored to find the agent of the defendant at the city of Buffalo, and, having failed to find such agent, mailed at the city of Buffalo, to the defendant, a letter, of which the following is a copy :

"BUFFALO, *March* 13, 1874.

"Secretary — I let you know I'll send you down thirty-five dollars on the policy 15,066, for the year that begins on the twentieth day of this month. Sir, will you have the kindness and let me know how much you want for the howle year ; I am willing to send it down as soon as I have it. I have paid this year three times, thirty-six dollars, and the fourth payment you did only charge me thirty-five dollars ; that makes my mistake a great deal more, as it was before on that old agent, and the year before I paid him four times thirty-five dollars. The money will be send by mail.

"FRIEDRICH MEYER."

Inclosed in the letter was a post-office money order for thirty-five dollars, which said letter with the inclosure was received by the defendant on the 16th day of March, 1874. That the defendant did not reply to said letter, or communicate with the plaintiff in any manner in respect thereto within three months after the receipt of the same, and did not, within the same period, furnish the information requested. That subsequently the defendant returned said post-office money order to the plaintiff. That on the 20th day of June, 1874, the husband of the plaintiff, in her behalf, sent to the defendant,

by mail, two postal money orders for sixty-five dollars, which were received by defendant June twenty-second, and were immediately returned with a letter stating that the policy was canceled for non-payment of premiums due March 20, 1874.

That subsequently, at different times, plaintiff's husband mailed to defendant post-office orders, which were returned, the reason stated being that the policy had been canceled, and in June, 1875, plaintiff offered to pay the entire amount due on the policy, which defendant refused to accept. The court found, as conclusion of law, that plaintiff was entitled to judgment, declaring the policy to be in full force, plaintiff to pay, within sixty days after entry of judgment, the past due premiums, with interest upon each from the time they became due and payable by the terms of the policy. Judgment was entered accordingly.

*Samuel Hand* and *Henry W. Johnson*, for appellant. The payment of the premium was a condition precedent to the continuance of the policy. (*Pitt* v. *Berk. L. Ins. Co.*, 100 Mass., 500; *Baker* v. *Un. Tr. L. Ins. Co.*, 43 N. Y., 383; *Howell* v. *Knick. L. Ins. Co.*, 3 Robt., 232; *Robert* v. *N. E. Mut. L. Ins. Co.*, 2 Dis.,   ; *Simpson* v. *Ac. Death Ins. Co.*, 2 C. B. [N. S.], 257; *Bissell* v. *Am. Ton. L. Ins. Co.*, 2 Bigelow, 151; Bliss on L. Ins. [2d ed.], 273; May on L. Ins., 406.) In matters of positive contract, or obligation created by a party, a court of equity cannot interpose, because he has been prevented from fulfilling by accident, ignorance or mistake, or because he has been in no default. (Forb. Eq. B., 1 Ch., 5, § 8; Story's Eq., § 101; Willard's Eq. [Potter's ed.], 57, 58; *Bullock* v. *Downes*, 6 T. R., 650; *Casy* v. *Burtie*, 2 Vern., 344.)

*John George Milburn*, for respondent. The course of dealing existing between the parties constituted a mode of payment, which plaintiff could follow without being subjected to a forfeiture of the policy. (*Lilley* v. *Fifty Associates*, 101 Mass., 432; *Dockham* v. *Smith*, 113 id., 320; *Home L.*

*Ins. Co.* v. *Pierce,* 75 Ill., 426; *Gray* v. *Green,* 9 Hun, 334; *Boody* v. *R. and Bur. R. R. Co.,* 3 Blatch., 25; Lindley on Part., 804; *B'klyn L. Ins. Co* v. *Dutcher,* 5 Rep., 97.) Such an arrangement made verbally would be binding. (*Dean* v. *Ætna L. Ins. Co.,* 62 N. Y., 642; *Ludwig* v. *Jersey City Ins. Co.,* 48 id., 379 ; *Blanchard* v. *Trim,* 38 id., 225.) Plaintiff's technical default having been contributed to by the acts and omissions of defendant, it cannot insist upon a forfeiture. (*Cohen* v. *N. Y. Mut. L. Ins. Co.,* 50 N. Y., 610, 618; *Sands* v. *N. Y. L. Ins. Co.,* id., 631, 632; *Homer* v. *The Guardian Mut. Life Ins. Co.,* Ct. of Ap., Dec. 12, 1876; *N. Y. Life Ins. Co.* v. *Stalham,* 93 U. S., 24; *Hamilton* v. *Mut. Life Ins. Co.,* 9 Blatch., 234; *Bird* v. *Penn. Mut. Ins. Co.,* 5 Bigelow L. & Ac. R., 487, pp. 491, 492; Story on Contracts [5th ed.], § 48; *McNeilly* v. *Cont. Life Ins. Co.,* 66 N. Y., 23; *McAllister* v. *N. E. Mut. Life Ins. Co.,* 101 Mass., 558; *N. E. Mut. Life Ins. Co.* v. *Hasbrook,* 32 Ind., 447 ; *Leslie* v. *Knickerbocker Life Ins. Co.,* 63 N. Y., 27; S. C., 5 N. Y. S. C. [T. & C.], 193; *Rowley* v. *Empire Ins. Co.,* 36 N. Y., 550; *Van Benthuysen* v. *Sawyer,* 36 id., 150; *O'Reilley* v. *Guardian Mut. Life Ins. Co.,* 3 T. & C., 487; *Buckbie* v. *U. S. Ins. Co.,* 18 Barb., 541; *Harris* v. *Troup,* 8 Paige, 423; *Home Life Ins. Co.* v. *Pierce,* 75 Ill., 426; *Mayer* v. *Mut. Life Ins. Co.,* 38 Iowa, 304; *Union C. Life Ins. Co.* v. *Poettker,* 5 Big. L. & Ac. R., 449; *Helme* v. *Pa. Life Ins. Co.,* 61 Penn. St., 107; *Thompson* v. *St. Louis Mut. L. Ins. Co.,* 52 Mo., 469; *Braswell* v. *Amer. Life Ins. Co.,* 75 N. C., 8; *Fitzpatrick* v. *Life Ins. As. of La.,* 25 La. Ann., 443; *Doe ex dem. Knight* v. *Rowe,* 2 Carr. & Payne, 246; *Hughes* v. *Metrop. R. R. Co.,* L. R., 1 C. P. D., 120; *Vogler* v. *World M. L. Ins. Co.,* 51 How. Pr., 301; *Ohde* v. *N. W. Mut. Life Ins Co.,* 40 Iowa, 357; *Hull* v. *N. W. Mut. Life Ins. Co.,* 39 Wis., 397; Chitty on Contracts [11th Am. ed.], pp. 1069–1072; *Smith* v. *Lascelles,* 2 Term, 187.) Non-performance of a condition precedent is excused when caused by the party to whom performance is due. (*Young* v. *Hunter,* 2 Seld., 203; *Man.*

*and Fr. Bk.* v. *Hazard,* 30 N. Y., 226; *Moses* v. *Bierling,* 31 id., 462; *Jencks* v. *Robertson,* 58 id., 621; *Hale* v. *Patton,* 60 id., 233; *Niblo* v. *Brusse,* 3 Abb. Ct. Ap., Dec., 375; Broom's Leg. Maxims, p. 282.)   Defendant is estopped from exacting the forfeiture, by its receipt for the money order and by its letter.   (Parsons on Contracts [6th ed., II], 794, n. r.; *Kelly* v. *Scott,* 39 N. Y., 595; *Cont. Nat. Bk.* v. *N. Bk. of Commonwealth,* 50 id., 575; *Pratt* v. *N. Y. Central Ins. Co.,* 55 id., 505; *Voorhis* v. *Olmstead,* 66 id., 113; *Blair* v. *Wait,* Ct. of Ap., March 20, 1877; *McNeilly* v. *Cont. L. Ins. Co.,* 66 N. Y., 29; *Mitchell* v. *Vermont Copper Co.,* Ct. of Ap., Nov. 14, 1876; *Georgia Masonic Co.* v. *Gibson,* 52 Ga., 640; *Walters* v. *Fire Ins. Co.,* 39 Wis., 489; *Blake* v. *Ex. Mut. Ins. Co.,* 12 Gray, 265; May on Insurance, §§ 361, 505, 507; Bliss on Life Insurance, § 266, *et seq.; Leslie* v. *Knick. L. Ins. Co.,* 5 N. Y. S. C. [T. & C.], 193; *Underwood* v. *Farmers' Joint Stock Ins. Co.,* 57 N. Y., 500; *Dohn* v. *Farmers' Joint Stock Co.,* 5 Lans., 275; *Post* v. *Ætna Ins. Co.,* 43 Barb., 351; *Homer* v. *Guard. L. Ins. Co.,* Ct of Ap., Dec. 12, 1876; *Globe Mut. L. Ins. Co.* v. *Wolff,* U. S. S. C., Nov. 5, 1877; The Reporter, vol. V, 1; Plaintiff, under the facts proved, was entitled to equitable relief.   (1 Spence's Equit. Jurisdic., 628, *et seq.* 631; 2 Story on Equity Juris., chap. 34; Willard on Equity Juris., 56, *et seq.; Baxter* v. *Lansing,* 7 Paige, 350; *De Forest* v. *Batts,* 1 Edw. Ch., 394; *Giles* v. *Austin,* 62 N. Y., 486; *Skinner* v. *White,* 17 J. R., 357, see 369, 370; *Cythe* v. *La Fontaine,* 51 Barb., 186; *Grigg* v. *Landis,* 21 N. J. Eq., 494; *Henry* v. *Tupper,* 29 Vt., 358; *Saunders* v. *Pope,* 12 Ves., 283, 291; *Bird* v. *Penn. Mut. Ins. Co.,* 5 Big. L. & Ac. R., 487, 493; Story on Equity Juris., §§ 110, 118, 147, 1316; *Atkins* v. *Chilson,* 11 Metc., 112; *Cohen* v. *N. Y. Mut. L. Ins. Co.,* 50 N. Y., 610, 623; *Sands* v. *N. Y. L. Ins. Co.,* 50 id., 626, 637.)   There has been no omission of duty on the part of plaintiff since March 20, 1874. (*Shaw* v. *Republic L. Ins. Co.,* Ct. of App., Apr. 10, 1877; 5 N. Y. Weekly Dig., 2; *Hayner* v. *Amer. Pop. L. Ins.*

Co., Ct. of App., Apr. 27, 1877; *Bird* v. *Penn. Mut. Ins. Co.*, 5 Bige. L. & Ac. R., 487; *Sampson* v. *Warner*, 48 Vt., 247; *Howard* v. *Daly*, 61 N. Y., 362, 368–370; *Hartley* v. *James*, 50 id., 38, 43; *Carpenter* v. *Holcomb*, 105 Mass., 280.)

FOLGER, J.   This is a suit in equity to have the court declare existing and in force a contract of insurance upon the life of the plaintiff's husband, which the defendant claims is lapsed by non-payment of the yearly premium.   Such a suit can be maintained, when the premiums have been tendered, and refused on the ground that the contract has been canceled and forfeited, when all the parties are before the court in an actual controversy sincerely promoted and carried on, when it is necessary for intelligent action for the parties to know at once what are their reciprocal rights and obligations.   (*Cohen* v. *N. Y. Mut. Life Ins. Co.*, 50 N. Y., 610; *Hayner* v. *Am. Pop. Life Ins. Co.*, 36 N. Y. Sup. Ct. [4 J. & S.], 211; S. C., affirmed, 62 N. Y., 620.)   These things exist in this case, and it is only to inquire whether the defendant has been in the wrong in declaring the policy lapsed and canceled.

By some of the terms of the written contract between the parties, it was a condition precedent to the continued liability of the defendant to the plaintiff that the latter should in each year, on or before the twentieth day of March, at noon, pay to the former the sum of $200.44.   The plaintiff did not on 20th March, 1874, make that payment in exact accordance with those terms, and if held to them exclusively and strictly, she has lost all rights under the contract and has no claim against the defendant; but there are clauses in the contract which affect the parties to it, and modify the terms of it which have just been mentioned.   Thus it is stated in it that "this policy is with profits," the significance of which will appear as we proceed.   There is also a clause, looking to the giving by the plaintiff of notes to the defendant for the annual payment or premium above mentioned or

a part thereof, and also for interest or for some other obligation on the contract. It is also provided, by clauses appended to the main contract, that the premiums or payments might be made quarterly or semi-annually as well as annually. We are not surprised, then, that intervening the issuing of the policy, and the time when that lapse of exact payment took place, much had passed between the parties: which materially affected their mutual rights and obligations.

Up to the year 1873, or for a space of six years, the defendant had received from the assured, without objection on its part, the payment of the yearly recurring premiums in a manner different from that expressed in the policy. In the year 1873 it agreed with the plaintiff to another material change in the mode of payment, and until a time after the 20th March, 1874, it had never given notice or hint that it would not be satisfied with the substituted method thereafter. It had also, on one occasion, received a post-office order from the plaintiff as a means of payment, and made no demur. It is true that there was a stipulation in the policy that the acceptance of payment after the pay day named therein should not be deemed to enlarge the time for payment, nor to be evidence of a usage of the defendant to receive the same after that day. But that stipulation does not vary the effect of the conduct of the defendant above recited, in the particular hereinafter stated. Another circumstance is, that the policy had originally been bargained for, at the place of abode of the plaintiff, with a local agent of the defendant stationed there, distant from the office of the defendant; and payments of premium before March, 1874, had been made, upon information as to the amount thereof, which amount, by the operation of some of the clauses of the contract, availed of by the parties by mutual consent, was not necessarily always the same, which information was got from that agent, by means of a particular statement thereof sent by the defendant to him for delivery to the plaintiff, and which was delivered by him to her.

This agent had been, before 20th March, 1874, discharged by the defendant from its service, and no one put in his place, and there was no ready way for the plaintiff of communication with the defendant but by the mail. It is true, that there was no contract obligation, express or to be implied, upon the defendant to continue that agency. But the discontinuance of it, rendering communication with the defendant more difficult, did heighten the duty upon it of taking notice of and replying to correspondence with it upon the subject of its business. So, to, in the course of the time for which the policy had run, the plaintiff had earned an interest or share in the funds of the defendant, by virtue of the clause of the policy providing for a share of its profits. The manner of applying that interest or share to the benefit of the plaintiff, in connection with the system of credit, allowed by the defendant to her for a part of the yearly premium, had made it impossible for her to know of herself just the amount which would at the beginning of any year satisfy the premium therefor.

With this state of things grown up between the parties, we find the plaintiff by her husband, her agent, as early as 14th March, 1874, seven days before the premium for that year became payable, addressing a letter to the defendant, asking for information of the amount needed to make that payment. That letter was received in due course of mail by the defendant, but was not duly replied to. In that letter there was inclosed a post-office order for a sum, in the belief of the plaintiff, expressed to the defendant in that letter, equal to the then last prior payment received by it of her. It is earnestly contended by the defendant that the post-office order was never received by the defendant, and that the phraseology of the letter was not such as to inform it that it was her purpose to inclose it therewith. But the finding of the trial court is otherwise, upon testimony, which, though conflicting, is enough to sustain it. And however dark the meaning of the letter, it was plain enough from it and from the money order that went with it, that

there was an intent on the part of the plaintiff to keep her contract, and a wish and an asking for information from the defendant to enable her to do it; and it knew that she did not have that information, that she could get it nowhere else but at its office, and that it had up to that time been given to her therefrom. It was willful for the defendant to remain silent, when so called upon to speak. That communication by mail was equivalent to the plaintiff going in person to the office of the defendant in due time, and there in person, handing in and leaving the post-office order, and orally asking them to tell her how much besides she need to pay to keep alive her policy for another year. When it is also a fact that, from the course of business between them, she could not know unless told by it, and that the defendant could and did know what that sum was, it is at once plain that by every rule of fair dealing, it was put upon the defendant to at once tell her what she asked for, or at the very least, to at once explicitly refuse and put her upon her vigilance. The defendant did neither but kept her money order and her letter and made no reply to it. It cannot now avail itself of the lapse on the part of the plaintiff to make strict performance of the contract, that lapse being encouraged — nay produced — by the omission and neglect of the defendant, and its sudden unnotified deviation from the mode of dealing with her which had become usual. It seems so plain, as that elaboration would but obscure it, that where, if a payment is not made by a certain day by the terms of a contract, a harm will come to one party and a benefit to the other, and what is the amount of that payment on that pay day is, from the course of business of the parties, known to the latter only, who, on the request of the former, refuses to make known the amount or keeps silence as to it when asked, and thereby the day goes past without payment being made, the party so refusing or being silent is derelict in duty to the other and may not take a benefit from the lapse.

True, the complaint alleges in general terms that her

lapse in making payment was through accident, mistake and ignorance; but it states in particular terms that such ignorance arose from the omission of the defendant to give to her that knowledge which it had before that imparted in due season, and which it alone could impart; and thus founds her claim for relief upon the action or refusal of action of the defendant. There may not have been originally any duty upon the defendant to give to the plaintiff information of the amount of the yearly premium from time to time in good season before pay-day. But when the defendant had so dealt for some time with the plaintiff, as to create a necessity for that information from it for the plaintiff to have positive knowledge of the exact amount of a premium for any year, and had led the plaintiff to suppose that such information would be given on application; and when the plaintiff asked in due time for that information, and could, had it been given, have easily made due payment, or had it been refused, have bestirred herself and kept her rights; the defendant could not be dumb and then avail itself to her harm and its benefit of a lapse thus produced, even though there was no ill purpose in its silence at first, or ever. The principles stated in *Leslie* v. *The Same Defendant* (63 N. Y., 27) uphold this conclusion; and see a late case in the United States Supreme Court, reported in 17 Albany Law Journal, page 368, *New York Life Insurance Company* v. *Eggleston.*

Nor was it needful after repeated offers to pay the recurring premiums, sufficient offers, inasmuch as they were in such shape as if received by the defendant would have put in its hands the money; and after repeated refusals thereof, and repeated declarations that the policy had ceased and had been canceled on the books of defendant, that the plaintiff should on each following pay-day make formal offer of payment. The plaintiff's claim for relief is on the foot of as full compensation by her to the defendant as strict observance of the contract would have yielded to it. The judgment provides for the same thing, and this is enough.

{*Shaw* v. *Rep. Ins. Co.*, in this court [69 N. Y., 286.], April, 1877; *Hayner* v. *Pop. Ins. Co.*, id., 435.)

The judgment should be affirmed.

All concur.

Judgment affirmed.