MARION L. EVANS, as Executrix of GRIFFITH EVANS,
Deceased, Respondent, v. SUPREME COUNCIL OF THE
ROYAL ARCANUM et al., Appellants.

**Insurance (life) — fraternal benefit societies — a member of
a fraternal benefit society who agreed in his application that
he might be suspended or expelled for failure to pay dues and
assessments and who has refused to pay assessments cannot
maintain an action to restrain the society from suspending
him nor can his executrix continue or maintain it.**

The plaintiff's testator became a member of the defendant, a
fraternal benefit society. In his application for membership he agreed
that his suspension or expulsion from, or his voluntary severing his
connection with, the society would forfeit the rights of himself and
family or dependents to all benefits and privileges therein. He
also agreed to make punctual payments of all dues and assessments
for which he might become liable and to conform in all respects to the
laws, rules and usages of the society then in force, or which might
thereafter be adopted. The certificate of membership issued to him
provided that if he complied with the laws, rules and regulations then
existing, or which might thereafter be enacted, governing the council
and fund, the society would, upon receiving satisfactory evidence of his
death, pay to his widow the sum named therein. At different times
after he became a member the assessments were increased. In 1916
he refused to pay an increased assessment, and was notified that unless
he paid that sum he would be suspended from membership and lose
all the benefits accruing under the by-laws. In refusing to pay the
assessments he relied upon a decision of this court (*Green* v. *Royal
Arcanum*, 206 N. Y. 591) to the effect that the amendment of 1905
increasing the assessment was unauthorized and invalid. He then
brought this action, the purpose of which was to procure a judgment
directing the society to receive the amount fixed at the time he became
a member each month as his assessment, and to enjoin it from sus-
pending him upon his making such payment. Upon the complaint and
affidavits he obtained an injunction *pendente lite*, enjoining the society
from suspending him as a member and from in any manner interfering
with his rights and privileges as such. To obtain the injunction he
gave the usual undertaking. After his death the action was con-
tinued in the name of his executrix, who served a supplemental com-
plaint, in which she asked that it be adjudged he was a member in
32

good standing at the time of his death, and that the contract was then in force, and that the valid, legal rate of assessment from October 1, 1913, to the time of his death be determined. *Held*, that decedent was not at the time of his death a member of the society, and that plaintiff, as executrix, could not in any event maintain the action, since she, as such, has no interest in its subject-matter. (*Royal Arcanum v. Green*, 237 U. S. 531, followed.)

*Evans v. Royal Arcanum*, 181 App. Div. 916, reversed.

(Argued May 14, 1918; decided May 28, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 7, 1917, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Howard C. Wiggins* for appellants. The executrix of the last will and testament of Griffith Evans cannot maintain this action. (*Bown v. Cath. Mut. Ben. Assn.*, 33 Hun, 263; *Beeckel v. I. O. O. U. F.*, 58 Hun, 7; 124 N. Y. 661; *Dominick v. Stern*, 79 Misc. Rep. 59; *Hellenberg v. Dist. No. 1, I. O. B. B.*, 94 N. Y. 580; Bacon on Ben. Soc. [3d ed.] § 237; *Wist v. Grand Lodge, A. O. U. W.*, 22 Oreg. 271; *Alexander v. Page*, 150 N. Y. Supp. 104; *Holland v. Taylor*, 111 Ind. 125.) Griffith Evans voluntarily forfeited his membership in the order by failing to pay the assessments lawfully chargeable against him. (*Sabin v. Phinney*, 134 N. Y. 428; *Hellenberg v. Dist. No. 1, I. O. B. B.*, 94 N. Y. 580; *Shipman v. Protected Home Circle*, 174 N. Y. 398; *Brenizer v. Royal Arcanum*, 141 N. C. 409; *Makman v. Ind. Order of Free Sons of Judah*, 86 Misc. Rep. 13; *Paster v. Nagelsmith*, 30 Misc. Rep. 791; *Marshall v. Grand Lodge*, 133 Cal. 686; *Freckman v. Supreme Council R. A.*, 96 Wis. 133; *Bost v. Supreme Council R. A.*, 87 Minn. 417; *Feeber v. Supreme Council, A. L. H.*, 112 La. 960; *National*

*Union* v. *Hunter*, 99 Ill. App. 146; 197 Ill. 478; *National Union* v. *Shipley*, 92 Ill. App. 355.) Equity has no power to annul the suspension which resulted from the failure to pay the assessments. (Kerr on Insurance, 451; *Whiteside* v. *N. A. Acc. Ins. Co.*, 200 N. Y. 320; *Matter of Attorney-General* v. *C. L. Ins. Co.*, 93 N. Y. 70; *Wheeler* v. *C. M. L. Ins. Co.*, 82 N. Y. 550; *N. Y. L. Ins. Co.* v. *Statham*, 93 U. S. 24; *Klein* v. *Ins. Co.*, 104 U. S. 88; *Thompson* v. *Ins. Co.*, 104 U. S. 252.) The injunction and undertaking did not prevent suspension. (*Scott* v. *Donald*, 165 U. S. 86; *Crane* v. *Peer*, 43 N. J. Eq. 553; *Barrett* v. *Bowers*, 87 Me. 187.)

*E. D. Lee* for respondent. At the time of his death Griffith Evans was a member in good standing, and his contract of insurance with defendant was in full force and effect. (*Langan* v. *Am. Legion of Honor*, 174 N. Y. 266; *Makman* v. *Free Sons of Judah*, 86 Misc. Rep. 13; *Meyer* v. *K. L. Ins. Co.*, 73 N. Y. 516; *Paster* v. *Nagelsmith*, 30 Misc. Rep. 791; *Stelts* v. *Tuska*, 82 App. Div. 81.) The defendants were amply protected by the bond given by the plaintiff at the time the restraining order was granted, which continued Griffith Evans as member of the Royal Arcanum. (*Matter of G. M. B. Assn.*, 63 Hun, 263; *Gray* v. *Daly*, 40 App. Div. 41; *Smith* v. *Bown*, 75 Hun, 231; *Langan* v. *American Legion of Honor*, 174 N. Y. 266; *Makman* v. *Ind. Order of Free Sons of Judah*, 86 Misc. Rep. 13; *Mock* v. *Supreme Council of Royal Arcanum*, 121 App. Div. 474.)

McLAUGHLIN, J. In March, 1886, Griffith Evans, the plaintiff's testator, became a member of the defendant Supreme Council of the Royal Arcanum, a fraternal benefit society. One of its by-laws provided that the object of the society was to establish a widows' and orphans' benefit fund, from which, on satisfactory evidence of the death of a member in good standing, a

sum not exceeding three thousand dollars would be paid to his widow, if he had so directed.

In his application for membership he agreed that his suspension or expulsion from, or his voluntarily severing his connection with, the society would forfeit the rights of himself and his family or dependents to all benefits and privileges therein. He also agreed to make punctual payments of all dues and assessments for which he might become liable and to conform in all respects to the laws, rules and usages of the society then in force or which might thereafter be adopted. Upon this application a certificate of membership was issued to him which provided, in part, that if he complied with the laws, rules and regulations then existing, or which might thereafter be enacted, governing the council and fund, the society would, upon receiving satisfactory evidence of his death, pay to his widow, Marion L. Evans, a sum not exceeding $3,000.

At the time he became a member, assessments of $1.68 were imposed at irregular intervals, which he paid until 1898, when the by-laws were amended and he was required to pay a monthly assessment of $3.44. These assessments he paid until 1905, when the by-laws were again amended and he was required to pay a monthly assessment of $6.33 until he attained the age of sixty-five, when it was increased to $16.08. He paid the monthly assessment of $6.33 to and including February, 1913, when he became sixty-five years of age, and thereafter paid $16.08 each month until the 1st of October of that year, when he tendered the assessment of $3.44 under the amendment of 1898 and also the sum of $6.33 under the amendment of 1905. The tenders were refused upon the ground that the amount due was $16.08, and he was notified at the time of such refusal that unless he paid that sum he would be suspended from membership and lose all the benefits accruing under the by-laws. In refusing to pay the assessments he relied upon a decision of this

court (*Green* v. *Royal Arcanum*, 206 N. Y. 591) to the effect that the amendment of 1905, increasing the assessment to $16.08, was unauthorized and invalid.

He then brought this action, the purpose of which was to procure a judgment directing the society to receive the sum of $3.44 each month as his assessment; and to enjoin it from suspending him upon his making such payment. Upon the complaint and affidavits he obtained an injunction *pendente lite*, enjoining the society from suspending him as a member and from in any manner interfering with his rights and privileges as such. To obtain the injunction he gave an undertaking in the sum of $250, to the effect that he would pay to the defendant such damages, not exceeding that sum, as it might sustain by reason of the injunction, if it were finally determined that he was not entitled thereto.

This was the situation when he died on March 23, 1915. After his death the action was continued in the name of his executrix, who served a supplemental complaint, in which she asked that it be adjudged he was a member in good standing at the time of his death; that the contract was then in force; and that the valid, legal rate of assessment from October 1, 1913, to the time of his death be determined. At the trial the facts were stipulated, from which it appeared that an appeal was taken from the decision of this court in *Green* v. *Royal Arcanum* (*supra*) to the Supreme Court of the United States, which reversed this court and held, in substance, that the amendment of 1905 was valid and assessments made thereunder were binding upon all members of the society. Notwithstanding such decision, and the fact that the assessments stated had not been paid, the trial court reached the conclusion that Mr. Evans, at the time of his death, was a member in good standing; that his contract of insurance was then in force; that the valid and legal rate of assessment for him from October 1, 1913, to March 23, 1915,

was $16.08 per month, which the plaintiff was directed to pay and she was awarded costs against the society. Judgment to this effect was entered upon the decision, from which an appeal was taken to the Appellate Division, where the same was affirmed, two of the justices dissenting, and defendants now appeal to this court.

I am of the opinion the judgment of the Appellate Division and of the Special Term should be reversed and the complaint dismissed. Mr. Evans, at the time of his death, was not a member of the society. The contract between him and the society was the constitution, by-laws, his application for membership and the benefit certificate issued thereon. (*Sabin* v. *Phinney,* 134 N. Y. 423, 428; *Shipman* v. *Protected Home Circle,* 174 N. Y. 398; *Brenizer* v. *Royal Arcanum,* 141 N. C. 409.) Under the by-laws he had, by his own act, in refusing to pay the legal assessments, ceased to be a member and had terminated his relations with the society. The temporary injunction did not continue him a member. All that did, or pretended to do, was to enjoin the society " from suspending " him as a member " and from in any manner interfering with his rights and privileges " therein. The society did not suspend him, nor did it in any manner interfere with his rights and privileges. He suspended himself. One of the by-laws provided that: " Any member failing to pay any regular assessment before the time prescribed for such payment in the Laws of the Order, or to pay any extra assessment within the time limited or prescribed therefor in the notice thereof, shall stand suspended from the Order and all benefits therefrom." Non-payment of the monthly assessments *ipso facto* operated as a suspension. (*Anderson* v. *Supreme Council O. of C. F.,* 135 N. Y. 107.) No affirmative action on the part of the society was required. The by-laws were self-executing. (*Roehner* v. *Knickerbocker Life Ins. Co.,* 63 N. Y. 160; *Freckmann* v. *Supreme Council R. A.,* 96

Wis. 133; *Bost* v. *Supreme Council R. A.*, 87 Minn. 417; *Marshall* v. *Grand Lodge*, 133 Cal. 686; *Hunter* v. *National Union*, 197 Ill. 478.) The fact that this court in *Green* v. *Royal Arcanum* (*supra*) had erroneously decided that the assessments which he refused to pay were invalid was not a legal excuse for non-payment. This was conclusively settled and determined by the Supreme Court of the United States (*Royal Arcanum* v. *Green*, 237 U. S. 531) when it reversed the judgment of this court. When he refused to pay the assessments he took his chances that the decision of this court, on appeal, would be sustained. In October, 1913, when he tendered $6.33 as his assessment for that month, he was obligated to pay $16.08 and he should have paid that amount. A valid by-law so provided and he had agreed that his rights were to be determined by it. He, therefore, by his own voluntary act, severed his membership in the society when he violated his part of the agreement, which was " to make punctual payments of all dues and assessments for which I may become liable." For nearly a year and a half before his death he paid nothing to the benefit fund. He could not, during that time, be a member for the purpose of receiving benefits and not for the purpose of making payments imposed.

It is no answer to the suggestion to say that the court, by its decree, directed his executrix to pay the assessments which he ought to have paid in his lifetime. A contract of this character, once destroyed, cannot be brought back to life in that way. It is beyond the power of a court of equity to so decree. Had Mr. Evans lived he would have been under no obligation to make the payments. The society could not have compelled him to make them. The injunction given imposed no such obligation. He did not even offer or agree to make such payments in case he were successful in the action.

I am also of the opinion that plaintiff, as his executrix,

cannot maintain the action. She, as such, has no interest in its subject-matter. It is elementary that an executor can maintain an action only when the subject-matter thereof affects the estate of his testator. Her testator had no interest in the proceeds of the certificate issued to him and his estate had none. He was merely authorized to designate some one to receive the proceeds to be paid upon his death. He designated his wife and the certificate issued to him provided that the society would pay to her, and not to his estate. If, at the time of his death, he had been a member in good standing, she personally would have been entitled to receive whatever the society paid. (*Beeckel* v. *Order of United Friends*, 58 Hun, 7; affd., 124 N. Y. 661; *Hellenberg* v. *Dist. No. One of I. O. of B. B.*, 94 N. Y. 580; *Bown* v. *Catholic Mut. Ben. Assn.*, 33 Hun, 263; *Holland* v. *Taylor*, 111 Ind. 121; *Stephenson* v. *Stephenson*, 64 Ia. 534; *Daniels* v. *Pratt*, 143 Mass. 216; *Kentucky Masonic Mut. L. Ins. Co.* v. *Miller*, 13 Bush, 489; *McClure* v. *Johnson*, 56 Ia. 620; *Maryland Mut. Ben. Soc.* v. *Clendinen*, 44 Md. 429.) Costs in an equity action are not a part of, or in any way connected with, the subject-matter of it. They are mere incidents of the litigation. (*Crosby* v. *Stephan*, 97 N. Y. 606; *Eastburn* v. *Kirk*, 2 Johns. Ch. 317.)

My conclusion, therefore, is that the judgments of the Appellate Division and Special Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, J. (dissenting). The opinion in this case makes the injunction order granted by the Supreme Court a useless formality and a nugatory process. I cannot agree that the injunction, which concededly restrained the officers from expelling Griffith Evans from the Royal Arcanum for the alleged non-payment of dues, was useless and a vain and empty effort upon the part of the court to preserve his rights. The officers and the

organization were restrained, but a by-law or contract of the member, it is said, was so passively effective as to nullify the injunction.

Griffith Evans was a member of Rome Council, No. 150, of the Royal Arcanum. He was sixty-five years of age and had paid dues for over twenty-five years. The organization had increased his dues from $1.86 to $3.44 and then to $6.33 a month, and finally, when he became sixty-five years of age, to $16.08 a month. This action had been held illegal by our court. (*Green* v. *Supreme Council of the R. A.*, 206 N. Y. 591.) He tendered in payment of his dues the amount which the courts had determined was all that could be demanded. The tender being refused, and threatened with expulsion, he resorted to the courts for determination of the controversy. The Supreme Court, upon his application, granted an injunction reading as follows:

" Ordered, that the above named defendants, their officers, agents, attorneys and employees, and any and all other persons be, and each, and all of them are hereby enjoined, restrained and prohibited from suspending the plaintiff, as a member of the defendants, and from in any manner interfering with his rights and privileges in said Supreme Council of the Royal Arcanum, or in said Rome Council, No. 150, of the Royal Arcanum, until the further order of this Court."

A bond was given to accompany the injunction, agreeing to indemnify defendant for any loss or damage occasioned by reason thereof. The supplemental complaint, according to the agreed statement of facts, asked that the valid legal rate of assessment be determined. This court is now about to hold that this injunction did not prevent the expulsion of Griffith Evans; that the working of the by-laws of the association did that which the association was restrained from doing. The by-laws read: " Any member failing to pay any rate or assess-

ment before the time prescribed for such payment in the laws of the order or to pay any extra assessment within the time limited or prescribed therefor in the notice thereof shall stand suspended from the order and all benefits therefrom." The prevailing opinion states that while the Supreme Court enjoined his expulsion and sought by means of injunction and bond to preserve the membership until the amount of the dues should be determined by the court, yet the effort was abortive as the member expelled himself under the by-laws for the non-payment of the dues demanded. To state such a proposition is to answer it. What was the object of resorting to the courts to determine the controversy between the member and the order if the court had no power to grant relief? We are about to decide that the very contract which the court was called upon to construe deprived the court of jurisdiction. Careful search fails to discover any case where equity is without power to maintain the membership in an organization like the Royal Arcanum until a controversy over that membership is settled. The following cases indicate that such power does exist. In *Meyer* v. *Knickerbocker Life Ins. Co.* (73 N. Y. 516) it was decided that a suit in equity would lie to determine the rights and obligations of the parties where the plaintiff had tendered his premium and the defendant has refused it, claiming the policy forfeited. In *Langan* v. *Supreme Council A. L. H.* (174 N. Y. 266, 271) an amended by-law of the defendant reduced the maximum death benefit to $2,000. The plaintiff held a benefit certificate for $5,000 and considered the by-law illegal. He tendered the assessment for the higher amount, and it being refused, brought action for breach of contract. It was held that there was no breach of contract which justified an action for damages, but that he " might resort to a court of equity and, upon the facts, ask its intervention in a decree which would compel the defendant to live up

to its contract and which would restrain it from proceeding under its void by-law." The *Langan* case has frequently been cited with approval as authority for the proposition that the courts of this state may interfere by injunction to preserve contract rights. (*Kelly* v. *Security Mutual Life Ins. Co.*, 106 App. Div. 352; 186 N. Y. 16; *Mock* v. *Supreme Council of R. A.*, 121 App. Div. 474; *Rockwell* v. *Knight Templars & M. M. A. Assn.*, 134 App. Div. 736, 742.)

The undertaking furnished, as in this case, saves harmless the association from any damage accruing by reason of the injunction. It is said that the member does not agree to remain in the order provided the court determines that the higher amount is due. He remains a member as long as the injunction continues, and his bond is liable for the dues ultimately determined as the amount payable under the by-laws. No other reasonable interpretation can be given to the proceedings. The spirit and the fair intent of the injunction order should govern. (*Stolts* v. *Tuska*, 82 App. Div. 81; *People ex re . Mayor, etc., N. Y.* v. *Pendleton*, 64 N. Y. 622, 624.) We have held as to contracts that the obligation to do a certain thing upon the part of one party may imply an obligation upon the part of the other. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.) When, in this case, the plaintiff asked that his membership be continued by an injunction, and furnished a bond to pay damages, he agreed in so doing to pay the dues up to the dissolution of the injunction. There would be no other damages to pay, and the giving of the bond would otherwise be frivolous. The supplemental complaint — a part of the agreed statement of facts — asks that Evans be declared a member in good standing at his death *and the amount of the assessments till then determined.*

Before Griffith Evans' action came to trial, he died, and his widow, as executrix, was substituted in his place

and a supplemental complaint served in which she states that the estate is ready to pay the increased amount if the court should determine that such were the sum due, and further asks that the membership certificate be declared in force and effect. Objection is made, in the main opinion, to the continuance of the action by the executrix. It is said that the estate has no interest in the costs. This may be so, but the executrix has an interest in protecting the estate from liability upon the bond given on the injunction and also in having judicially determined the liability of Griffith Evans upon the membership certificate up to the time of his death. The validity of this point seems to be predicated upon the correctness of the opinion that the certificate of membership was canceled.

The fact that *Green* v. *Supreme Council of the R. A.* (206 N. Y. 591) was subsequently reversed by the United States Supreme Court (237 U. S. 531) can have no further effect than if our own Supreme Court had decided upon the trial of the Evans' action that the increase in rate was proper. The judgment which has been entered in this case by the lower courts follows the decision of the United States Supreme Court in determining that the rate of dues for Evans was $16.08 per month, and further holds that Griffith Evans was a member of the Royal Arcanum up to the time of his death, that his contract of insurance was then in full force and effect, and that the defendant recover from the plaintiff the full amount of the dues according to this increased rate. The death of Griffith Evans and the error of this court are but incidents in this litigation and in no way affect the jurisdiction and relief which a court of equity may afford.

HISCOCK, Ch. J., CUDDEBACK and ANDREWS, JJ., concur with MCLAUGHLIN, J., and CARDOZO, J., concurs in result; CRANE, J., reads dissenting opinion; POUND, J., not voting.

Judgments reversed, etc.