In the Matter of the Application of MULLER DAIRIES, INC., Petitioner, for a Certiorari Order against CHARLES H. BALDWIN, Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, November 2, 1934.

*Alger, Peck & Grafton* [*George W. Alger* and *Arthur J. Peck* of counsel], for the petitioner.

*Henry S. Manley, Counsel for the Department of Agriculture and Markets,* for the respondent.

HILL, P. J. We are reviewing, under an order of certiorari, the determination of the Division of Milk Control of the Department of Agriculture and Markets and of the Commissioner of Agriculture, denying petitioner's application made under section 258 of the Agriculture and Markets Law (added by Laws of 1934, chap. 126) for a renewal license as a milk dealer. Section 258-c of the act vests power in the Commissioner of Agriculture to refuse to renew a license if there has been a violation of any provision of the law. Petitioner, from February 16 to April 9, 1934, purchased milk from producers at less than the minimum price fixed by the Board of Milk Control and by the Division of Milk Control. (By chapter 126 of the Laws of 1934 the Division of Milk Control in the Department of Agriculture and Markets succeeded the Milk Control Board formed under chapter 158 of the Laws of 1933. The change was effective April 1, 1934.) The rules of the Department have the force and effect of law. (Agriculture & Markets Law, § 255, added by Laws of 1934, chap. 126.) The Board of Milk Control and its successor have at all times fixed the minimum price which the dealer was required to pay the producers. On January 30, 1934, the order fixing the minimum selling price for the dealer was annulled.

The argument of petitioner is that a minimum selling price sufficiently in excess of the purchasing price to yield a reasonable return must be fixed, else its property will be confiscated, and as the Board annulled the order fixing the minimum selling price, it was lawful to disregard the order fixing the minimum price to be paid producers. The provisions of section 312 of the 1933 act* are cited to sustain this contention. " The board shall take into consideration all conditions affecting the milk industry including the amount necessary to yield a reasonable return to the producer and to the milk dealer. (b) The board after making such investigation shall fix by official order the minimum wholesale and retail

* See Agriculture and Markets Law (added by Laws of 1933, chap. 158, and repealed by Laws of 1934, chap. 319).

prices and may fix by official order the maximum wholesale and retail prices to be charged for milk handled within the state for fluid consumption." By other provisions in the same section the Board is directed to fix the price paid by dealers to producers.

The Legislature declared an emergency to exist in connection with the production, distribution and sale of milk in the State, and that it was a business affecting the public health and interest during such period. (Agriculture & Markets Law, § 300, added by Laws of 1933, chap. 158.) The acts of the Legislature in this regard and in providing a regulatory commission with powers somewhat approximating those exercised by the Public Service Commission in the public utility field, have been declared constitutional. (*People* v. *Nebbia*, 262 N. Y. 259; affd., 291 U. S. 502.) The fixing of prices, like the fixing of rates or fares, is a legislative function, and here it was delegated to the Milk Control Board. Whether the prices fixed by the Board amounted to confiscation of petitioner's property was a judicial question for the courts. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123.) It was an unlawful act for petitioner to refuse to comply with the order promulgated by the Milk Board. It had the force of a statute and was entitled to the same respect. The orderly functioning of governmental agencies requires a dealer to seek a remedy from the courts if it believes its constitutional rights invaded. Petitioner's brief concedes refusal to comply with the order of the Board and explains its failure to seek a remedy from the court by saying that the act of the Milk Control Board " had been expressly held illegal by the Supreme Court in *Baldwin* v. *Dellwood Dairy Co., Inc.* (150 Misc. 762)." Petitioner's non-compliance began on February 16, 1934. From the official edition of the Miscellaneous Reports it appears the decision in the *Dellwood* case was made a month later. In any event, a litigant who has trusted to the erroneous judgment of an inferior tribunal is not entitled to be helped out by the courts. (*Evans* v. *Supreme Council, Royal Arcanum*, 223 N. Y. 497, 503; Cardozo, The Nature of The Judicial Process, pp. 147, 148.) Should this statute be construed as requiring that a minimum price be fixed at an amount to yield a reasonable return to all milk dealers, the permission to fix a maximum price greater in amount would be leave to give to the dealers more than a reasonable return. Such legislative intent will not be assumed. The expense of handling and selling milk will differ among dealers. One price for all in some cases would yield more than a reasonable return, in others less. The Legislature empowered the Board to fix a minimum and a maximum price, believing in that range all dealers would receive a reasonable

return; also the fixing of a maximum price would prevent a combination of the dealers obtaining an exorbitant price from the public. As no maximum price has been fixed, the petitioner has been at liberty to sell milk at a price that would yield a reasonable return. This is true of its competitors. Each milk dealer, under the rules, paid the same price to the producer. Each had an equal opportunity to sell at a price that gave a reasonable return. If some of petitioner's competitors, through favorable contracts or economies, paid less for transportation and handling the milk so that sales could be made below those which would return a profit to petitioner, or if they sold milk at a loss, it was no concern of the State. The act of the Board in annulling the minimum selling price did not make it lawful for petitioner to ignore and violate the order as to the amount to be paid producers. If it felt aggrieved, and that the statute required the Board to fix a minimum selling price, it should have applied for an order of mandamus requiring the Board to perform its statutory duty.

The opinion in the *Dellwood* case seems to indicate a belief on the part of its author that the Milk Board was required not only to fix a minimum price, but to fix it at such an amount as would yield a reasonable return to every milk dealer. With this I do not agree. Possibly such a conclusion might be reached as to maximum prices fixed. The report of the Pitcher Legislative Committee that led to the enactment of the statute with which we are dealing, indicates that the emergency involved chiefly the producer, the dairy farmer. It recites that milk was sold by the producer in 1932 " much below the costs of production," and in January, 1933, at " little more than half the cost of production " (p. 14), while the dealers in April, 1932, received a profit " equivalent to a return of 12 per cent " on their investment and nine and three-tenths per cent for the entire year of 1932 (p. 22).

The provision in the statute as to the fixation of the dealers' minimum selling price is a police regulation in the new governmental experiment of controlling the management of private business. It is a penal measure aimed at chiselers. It did not limit the amount of a dealer's profit. The selling price could be made any figure which would attract customers. If under the new industrial program a milk dealer's business will not survive, it is only the fate of many others. There was no governmental guaranty to petitioner that its business would be profitable. The statute was an attempt to regulate the conduct of the business so that ruinous price cutting would be abolished.

In view of the fact that the petitioner was guilty of no secret violation of the order involved or of the law, the attorney for the

Division of Milk Control in his brief states: " If the orders of the Milk Control Board are valid those producers are entitled to receive from Muller Dairies several thousand dollars additional to what it already has paid them, and upon making that payment it [petitioner] will receive a license." The determination should be confirmed on such representation.

The determination should be confirmed, with fifty dollars costs.

RHODES, McNAMEE, BLISS and HEFFERNAN, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements, without prejudice to the right of petitioner to apply for a renewal of its license upon showing payment in full to the producers.